John BURNS, Appellant,

v.

George BISHOP and the State
of Texas, Appellees.

No. 14–98–00221–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 7, 2001.

Mark A. Font, Houston, for appellants.

George M. Bishop, C. Charles Dippel, Houston, for appellees.

Panel consists of Justices DRAUGHN, LEE, and DUNN.*

## OPINION

D. CAMILLE HUTSON–DUNN, Justice (Assigned).

Appellant, John Burns, complains of the trial court's disposition of $100,172.42 in the registry of the court. The money was posted in connection with an appeal and settlement in a suit by his former associate in a bonding business. In the current dispute over the money left in the registry, the trial court awarded the money to creditors who were not parties to the original case.[1]

In this case, the trial court awarded attorney's fees of $1,000 to the Harris County District Clerk and $1,000 to the State of Texas, and awarded thirty-four percent of the remaining money in the registry to George M. Bishop and 66 percent to the State. On appeal, Mr. Burns contends the money was not his, and therefore could not be awarded to his judgment creditors from other cases. He also contends proceedings outside Harris County rendered the award void. Bishop and the State are cross-appellants, each challenging Mr. Burns' standing on appeal, and each claiming the entire amount that remained in the registry of the court after the appeal and settlement deposit. We reverse the $1,000 award of attorney's fees

---

* Senior Justices Joe L. Draughn, Norman Lee, and D. Camille Hutson Dunn sitting by assignment.

1. We recognize that there can be but one judgment in a cause, but we regard the assignment of the number of a completed cause to a new dispute as an administrative error insignificant to the disposition of the merits.

to the District Clerk and render judgment deleting that award from the judgment. Otherwise, we affirm.

## *FACTUAL AND PROCEDURAL HISTORY*

### *Factual Summary*

The trial court increased the *supersedeas* amount in the bonding business case in several stages. The money in the registry of the court originated in part from $170,000 Mr. Burns posted in stages, pursuant to the court's orders. Before the appellate opinion issued, he agreed with his former business associate to settle the case for less than the amount of the *supersedeas* funds in the registry of the court. The parties agree that Burns' former business associate deposited some of the currently disputed funds in the registry pursuant to that settlement agreement.

In the current proceeding, the appellant offered the trial court a promissory note that indicates he borrowed his initial *supersedeas* deposit, in the principal amount of $117,274.41, from a family limited partnership. He also offered a notarized, contemporaneous bill of assignment. The bill of assignment stated:

I, JOHN B. BURNS, depositor of a cash deposit in the sum of One Hundred Seventeen Thousand, Two Hundred Seventy–Four and ⁴¹⁄₁₀₀ Dollars ($117,274.41) in lieu of supersedeas bond, deposited in the registry of the Court on December 3, 1991, in the above styled and numbered cause, do hereby assign and transfer and to be made payable [sic] to JCB 1991 Family Limited Partnership, all my cash refund up to and including the principal amount of $117,274.41 plus accrued interest, upon final disposition of the above styled and numbered cause.

The assignment to the partnership addressed only a cash refund of the principal from the note, with interest. The assignment did not address a cash refund of additional supersedeas funds Mr. Burns' opponent might later persuade the trial court to require Burns to deposit or the amount contractually required under the agreement settling the case.

However, his former business associate did win rulings requiring additional deposits. His wife, Carol Burns, a partner in the family partnership, later deposited $4,270.35 under her own name, but on his behalf. Peerless Insurance, the criminal bonding business insurer, deposited an additional $42,769.25 on his behalf from the "buildup fund" the bonding business had accumulated. A portion of this "buildup fund" belonged to his former business associate.

No cash refund ever occurred. The only release order in the record is an agreed order to pay out $70,000 to his former business associate's attorneys, signed after the appellate opinion, but before the mandate. Nevertheless, the parties to this appeal agree that the trial court distributed the *supersedeas* moneys according to the mandate.

### *Procedural Summary*

The award challenged in this appeal involved procedures in several courts, consolidated before a single judge. The disputed money was deposited in the registry of the 125th District Court of Harris County, Texas. In the 215th District Court of Harris County, Appellee George Bishop obtained a judgment against Mr. Burns for attorneys fees Bishop claimed he had earned in another case. The State of Texas obtained a judgment on forfeitures of criminal bonds Burns had written in the 177th District Court.

The three courts' orders began to conflict, to overreach their jurisdiction, and to confuse the Harris County District Clerk. Both Bishop and the State obtained turnover orders directed to the Harris County

District Clerk. The State obtained a judgment in garnishment (later vacated) against the Clerk in the 177th District Court. The State also intervened in the 125th District Court, seeking garnishment or application of the funds, but then non-suited its request. There was a dispute whether the funds were subject to turnover or garnishment orders. In the 215th District Court, Bishop obtained a writ of mandamus ordering the Clerk to pay Bishop from the funds remaining in the registry of the 125th District Court after the superceded judgment was satisfied. The 125th District Court tried to rule on the other courts' post-judgment orders, assigning a Master in Chancery, but had no jurisdiction over enforcement of the other courts' judgments.

Although the dispute was resolvable as a matter of law, the resolution still had to be made. Finally, all three judges signed an order consolidating the cases under the number of the case in which the *supersedeas* bond had been posted, and transferring them to the 177th District Court. The presiding judge assigned a visiting judge to determine the entire dispute.

The family partnership that had received the promissory note and assignment of the initial *supersedeas* deposit intervened after the consolidation in the 177th District Court, requesting the court to pay the money on deposit to the partnership.

The judgment creditors' claims exceeded the amount in the registry of the court. The trial court did not find the funds in the registry belonged to the partnership. It found the partnership's assigned claim of any refund was inferior to the judgment creditors' claims to the funds in the registry, and the partnership has not appealed. Instead, the court concluded John Burns had a claim to the funds in the registry, against which claim his creditors could collect. The court awarded $1,000 attorney's fees each to the District Clerk and the State. It then divided the remaining money in the registry of the court in rough proportion to the amounts of their claims.

## PRELIMINARY JURISDICTIONAL ISSUES

### Appellant's Standing

■ Appellees challenge the Appellant's standing to assert the partnership's claim to the disputed funds. The trial court necessarily found Mr. Burns had a legal or equitable interest in the deposited funds sufficient for it to award the money to his creditors. The Appellees' claims depend upon Mr. Burns having an interest in the money. Conversely, the partnership's interest under the assignment would affect his liability under the promissory note, with either positive or negative tax consequences. While the standing argument is skillfully framed, John Burns has standing to complain about rulings that affect his interests.

### Jurisdiction for Cross-appeals

■ The State of Texas did not fail to invoke our jurisdiction when it did not file a notice of appeal in compliance with Texas Rules of Appellate Procedure 25 and 26. However, it would be unfair to the State to disclaim jurisdiction that had already attached under the old rules by applying new rules that would set a deadline on a date that passed before the rules were promulgated. Paragraph four of the Texas Supreme Court's order approving revisions to the Texas Rules of Appellate Procedure allows the cross-appeals to be brought by complying with either the old rules or with the new rules. Accordingly, we find we have jurisdiction over all of the appellate claims the parties have made.

### No Proceedings Outside Harris County

■ The Appellant contends the judgment is void under article V, section 7 of the Texas Constitution, which states in relevant part, "The Court shall conduct its proceedings at the county seat of the county in which the case is pending, except as otherwise provided by law." TEX. CONST. art. V, § 1–a(11) (Vernon 1993). After the visiting judge held the hearing in Harris County, when parties filed further evidence and written arguments with the 177th District Court in Harris County, they sent courtesy copies to the judge in San Angelo. Rendition was "by written memorandum filed with the clerk" in Harris County. Mr. Burns argues that, by considering courtesy copies of arguments and evidence in San Angelo, and by signing the final judgment in San Angelo, the trial judge held proceedings outside Harris County. The Appellant contends the judgment is therefore void. We disagree.

The salient issue is whether the visiting judge was conducting "proceedings" by thinking about the case in San Angelo, and by signing the judgment there. The term "proceeding," as used in article V, section 7, is very broad. *Mellon Service Co. v. Touche Ross & Co.*, 946 S.W.2d 862, 868 (Tex.App.—Houston [14th Dist.] 1997, no writ).[2] In *Mellon*, we quoted definitions from both Webster's dictionary and Black's Law Dictionary. We quoted the Webster's Dictionary definition as "a particular step or series of steps adopted for doing or accomplishing something." *Id.* (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1807 (1993)). The definition we quoted from Black's Law Dictionary is similarly broad:

In a general sense, the form and manner of conducting juridical business before a court or judicial officer. Regular and orderly progress in form of law, including all possible steps in an action from its commencement to the execution of judgment. . . . The proceedings of a suit embrace all matters that occur in its progress judicially. . . . Term "proceeding" may refer not only to a complete remedy but also to a mere procedural step that is part of a larger action or special proceeding.

BLACK'S LAW DICTIONARY 1204 (6th ed.1990). *Mellon* involved an actual court hearing conducted outside the county in which the case was pending. The *Mellon* judgment referred several times to the "arguments of the parties" as a consideration in the decision. Accordingly, in *Mellon* we found the judge had *made* the summary judgment hearing an important part of the proceeding. As a result, we concluded the plain meaning of the word "proceedings" in article V, section 7 would include that summary judgment hearing.

■ In contrast, any proceedings after the Harris County hearing in this case were conducted by submitting documents to the Harris County District Clerk. We do not believe *Mellon* means to include mental processes of judges in its interpretation of "proceedings."[3] Nor do we believe a party can deprive courts of jurisdiction by delivering, faxing, or e-mailing briefs, photocopies of evidence on file, or proposed orders to a judge who happens to be standing on the soil of another county. The visiting judge's mental processes in San Angelo, although informed by courte-

---

2. We are aware that the Austin court of appeals is persuaded, noting disagreement with *Mellon*, that article V, section 7 is not jurisdictional. *See Fain v. State*, 986 S.W.2d 666, 674 n. 11 (Tex.App.—Austin 1998, pet ref'd).

3. Subjectively reaching a conclusion, or even announcing what the decision will be *when* it is rendered does not constitute the official act of rendition. *See Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex.1976).

sy copies of documents filed with the court in Harris County, were not an official procedural step. The "proceedings" article V, section 7 clearly contemplates are official processes, not the mental processes, informal courtesies, and conveniences that facilitate official processes. Appellant's interpretation of "proceedings" would require the State of Texas to pay judges to travel from county to county merely to sign their names or to review copies that could be delivered, faxed, or e-mailed.

■■■ Signing and rendition are not synonymous. TEX.R. CIV. P. 306a(1) ("The date … judgment or order is signed as shown of record shall determine the beginning of the periods … but this rule shall not determine what constitutes rendition of a judgment or order for any other purpose."). Signing an order is not among the official steps that would fall within the common meaning of "proceedings." *Dal–Briar Corp. v. Tri–Angl Equities, Inc.*, 22 S.W.3d 520, 523 (Tex.App.—El Paso 2000, no writ hist.) (holding that any orders stemming from actual hearings outside the multicounty district were void, but signing in El Paso County a motion to transfer venue to El Paso from another judicial district substantially complied with article V, section 7). Drafting and signing the judgment were preparatory, *administrative* acts that would authenticate the record of the court's rendition. *See Crawford v. Crawford*, 315 S.W.2d 190, 192 (Tex.Civ. App.—Waco 1958, no writ) (ruling that a judge whose term of office had ceased could perform clerical duties necessary to make a record of the judgment rendered during his term by signing the judgment,

even after his successor had taken office); *Texas Life Ins. Co. v. Texas Building Co.*, 307 S.W.2d 149, 154 (Tex.Civ.App.—Fort Worth 1957, no writ) (same, citing *Storrie v. Shaw*, 96 Tex. 618, 75 S.W. 20, 22 (Tex. 1903)). Rendition occurs when the trial court officially announces its decision (1) in open court in a manner that objectively reflects its intention to render or (2) by written memorandum *filed with the clerk. S & A Restaurant Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex.1995). Thus, since rendition did not occur in open court, the official procedural step of rendition took place when the judge appropriately filed a written rendition in the Harris County public record. We find that the judgment in this case is not void. *Bridgman v. Moore*, 143 Tex. 250, 183 S.W.2d 705, 707 (1944).[4]

## MISSING DOCUMENTS

■■ The Appellant has contended that we must reverse and remand because several documents are missing from the record. The Supreme Court has refined Rule 34.5(d) and (e) to effect its purpose without unnecessary retrials. While we are applying the old rules of appellate procedure to occurrences before the new rules were promulgated, applying the current rules to current procedures best allows us to reach the merits of the case without contravening the policy of the old rule. *See* TEX. R.APP. P. 34.5(d) & (e). Mr. Burns has had an opportunity to pursue replacement or to show how the missing documents might affect our disposition. He has chosen not

---

4. Signing the judgment somewhere other than the Harris County Courthouse, while not a "proceeding," might have been an administrative irregularity. In *Bridgman*, the Texas Supreme Court found that signing the judgment somewhere other than the county seat was an "irregularity," but substantially complied with article V, section 7. Mr. Burns did not object to the place of signing by motion for new trial or otherwise, and Mr. Burns has not shown how signing the judgment in San Angelo harmed him. *See Bridgman*, 183 S.W.2d at 708.

to do so. Accordingly, this claim is overruled.

### AUTHORIZING THE VISITING JUDGE TO EXERCISE JURISDICTION

■ The administrative procedure placing the courts' paperwork in a consolidated file, and deciding where the files should be located must not be confused with the substantive authorization of the visiting judge to exercise subject matter jurisdiction. Orders from all three courts and from the presiding judge were required. We read the consolidation and transfer order and presiding judge's assignment order to effectuate the judges' clear intent, and we presume the judges intended to act within the law. Accordingly, we must interpret the administrative appointment and transfer and consolidation orders as authorizing the visiting judge to sit simultaneously for the 125th District Court, the 177th District Court, and the 215th District Court. Without such an order, neither the 215th District Court nor the 177th District Court had jurisdiction over each others' judgments or the money in the registry of the 125th District Court. *See Hardy*, 556 S.W.2d at 844 (final and complete release order takes money from registry of court, making it subject to post-judgment claims). Concomitantly, the 125th District Court would not have jurisdiction to enforce the other courts' judgments. While the 215th and 177th District Courts could not grant the relief sought, neither did those courts dismiss the claims. The consolidation, transfer, and appointment of a visiting judge after conflicting orders placed the custody of the money and of all claims against that fund for the first time before a judge with jurisdiction of all matters in dispute. Giving one judge authority to resolve all disputed issues in a single proceeding was an adroit and efficient administrative solution to the courts' theretofore conflicting orders. Mr Burns did not object to the procedure.

### SUPERIOR CLAIM TO THE MONEY

■ The parties assert competing contentions of superior claims by the State, by Bishop, and by the partnership. It is axiomatic that an assignee or subrogee walks in the shoes of his assignor and takes the assigned rights subject to all defenses which the opposing party might be able to assert against his assignor. *See Houchins v. Scheltz,* 590 S.W.2d 745, 750–51 (Tex. Civ.App.—Houston [14th Dist.] 1979, no writ). Thus, the partnership could receive only what John Burns had and conveyed, while the State and Bishop were subrogated to Mr. Burns' claim.

When the superceded judgment was satisfied, John Burns had only an unadjudicated claim of an equitable interest in money on deposit in the registry of the court. Under the theory he held equitable title, the District Clerk held legal title as trustee pending the court's determination of his claim. *See Sellers v. Harris County,* 483 S.W.2d 242, 244 (Tex.1972). The trial court had released the portion of the *supersedeas* funds that fulfilled the purpose of the deposit, the previously superceded judgment was final and satisfied, and Mr. Burns' former business associate had deposited a settlement payment. Accordingly, the money in the registry no longer represented a *supersedeas* fund.

While determining Burns' interest, the visiting judge had to resolve whether the other parties' claims to the money were superior to Mr. Burns' claim that the money should be refunded. An order releasing the funds would have made the money in the hands of the District Clerk subject to claims to enforce judgments. *Hardy v. Construction Sys., Inc.,* 556 S.W.2d 843, 844 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd, n.r.e.). Upon attachment

of those claims, the Appellees would obtain a superior claim to John Burns' interest in the funds on deposit. *San Felipe Nat'l Bank v. Caton,* 668 S.W.2d 804, 805 (Tex. App.—Houston [14th Dist.] 1984, no writ).

■ The partnership's only claim to the specific money on deposit was based upon the contingency that it would be refunded. Had it possessed a claim to the unrefunded deposit, the trial court would have had the discretion to enter a judgment for the partnership instead of awarding it a share of the money in the registry. *Sommers v. Concepcion,* 20 S.W.3d 27, 36 (Tex.App.—Houston [14th Dist.] 2000, pet. denied). The partnership pled the note, but did not ask to recover judgment against Mr. Burns. It requested only that the court dissolve the remaining garnishment, and pay the money in the registry of the court to the partnership, "to the exclusion of all other parties claiming an interest therein." The partnership's claim under the assignment was limited not only to John Burns' interest, but also to what he assigned, his refund of the loan principal. Even if a refund occurred, Mr. Burns did not assign the partnership the whole refund. He limited his assignment to the $117,274.41 principal from the note, plus interest upon that amount. By the time the *supersedeas* fund satisfied his former business associate's judgment, the fund consisted of multiple contributions on behalf of Mr. Burns. Therefore, to support an award of any particular amount, the partnership needed to advance a viable theory, supported by evidence of what portion of the money in the registry was comprised of the original principal and interest that the assignment covered. Since Mr. Burns did not receive a refund, the assignment transferred nothing to the partnership. The partnership did not pray for judgment on the note, was not awarded the money, and has not appealed.

■ The consolidation, transfer, and assignment placed the visiting judge in the same position as any judge who has jurisdiction over funds in the registry of the court and over conflicting claims to the money. Funds on deposit in the registry of a trial court are always subject to the control and order of the trial court, and the court enjoys great latitude in dealing with them. *Stuart v. Bayless,* 945 S.W.2d 131, 146 (Tex.App.—Houston [1st Dist.] 1996), *rev'd on other grounds,* 964 S.W.2d 920 (Tex.1998) (affirming in all respects except an award of unpled special damages). The judgment creditors' pleadings may, indeed, have been in the wrong form, with the wrong titles and terminology, but clearly gave notice the Appellees sought to have the money in the registry of the court paid to them. *See Surgitek v. Abel,* 997 S.W.2d 598 (Tex.1999) (courts to read pleadings according to the relief sought, not according to labels or titles). The relief requested was to enforce judgments within the judge's jurisdiction from funds within the court's jurisdiction and discretion. There were no special exceptions or other disputes below about the form of the claims. Contrary to their cross-claims on appeal, the resolution of Mr. Burns' claim and the attachment of the judgment creditors' superior interest to his claim were adjudicated simultaneously when a single final "judgment" made the awards. The cross-points of George Bishop and the State of Texas are therefore overruled.

■ Many of Mr. Burns' contentions fail together because they are grounded upon the same mistaken assumptions. We overrule Mr. Burns' first contention, that the entire fund belonged to the partnership, as there was neither evidence of a refund nor legal and factual support for the portion of the deposit the partnership should recover. We also overrule as irrelevant his second point that

assigning the refund was not a fraudulent conveyance, since there was no refund. Mr. Burns' third point, that the evidence is legally and factually insufficient to show the funds awarded to Bishop and the State belonged to him, is also overruled. The record establishes that, after satisfaction of the superceded judgment, Mr. Burns had the only claim to the funds the District Clerk held—until the Appellees asserted their superior interest in his claim. The fourth point, that the evidence is legally and factually insufficient to show the funds were subject to his control, addresses an error that is harmless because his control was unnecessary to the disposition. Since control was unnecessary, the fifth point, that Burns' control did not support awarding the money to his creditors, is also harmless error. The sixth point, that the trial court erred by ruling the partnership's interest inferior to the rights of the State and Mr. Bishop is also overruled. Any claim the partnership could assert was based upon his own inferior interest to whatever was left and refunded after satisfaction of the Appellees' claims.

 We sustain John Burns' seventh point insofar as it complains of the award of attorney's fees to the District Clerk. The District Clerk had not pled for attorneys' fees. The State, however, pled for attorney's fees in collecting its judgment on Mr. Burns' bond. For a claim based upon a written contract, the trial court may determine a reasonable fee for legal services based upon its knowledge of usual and customary rates and its review of the file, even if no other evidence is offered. *Mabon Ltd. v. Afri–Carib Enterprises, Inc.* 29 S.W.3d 291, 302 (Tex.App.—Houston [14th Dist.] 2000, no writ); *Ross v. 3D Tower, Ltd.,* 824 S.W.2d 270, 273 (Tex.App.—Houston [14th Dist] 1992, writ denied) (Chapter 38 of the Texas Civil Practice & Remedies Code applies to post-judgment proceedings in a suit based upon contract, so statutory presumptions and judicial notice of file support award of attorney's fees). There has been no showing that the trial court abused its discretion. *See Mabon,* 29 S.W.3d at 302. Accordingly, insofar as it regards the award of attorney's fees to the State, Appellant's seventh point is overruled.

We reverse the judgment of the trial court awarding attorney's fees to the District Clerk, and render judgment that the District Clerk of Harris County take nothing. We affirm the remainder of the judgment of the trial court. Because the appellate relief given appellant is *de minimis* compared to appellees' overall award affirmed on appeal, we assess all costs of this appeal against appellant. *See* Tex. R.App. P. 43.4; Tex.R. Civ. P. 139, 141; *Keene Corp. v. Gardner,* 837 S.W.2d 224, 232 (Tex.App.—Dallas 1992, writ denied).