Affirmed and Opinion filed June 18, 2009








Affirmed and Opinion filed June 18, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00970-CV

____________

 

DAWN JOHNSON WHATLEY, INDIVIDUALLY
AND AS EXECUTRIX OF THE ESTATE OF PERRY LEE WHATLEY, DECEASED, AND MICHAEL
EASTON,
Appellants

 

V.

 

MYLUS JAMES WALKER, JR., JEANIE ANDERSON, AND ROBERT DANIEL
WHATLEY, Appellees

 



 

On Appeal from the Probate
Court No. 2

Harris County, Texas

Trial Court Cause No. 355,095

 



 

O P I N I O N








This is an appeal from the probate court=s final order
appointing a guardian over the person and estate of Perry Lee Whatley (APerry@).  Perry died
after the probate court signed the final order at issue in this appeal, and his
widow, Dawn Johnson Whatley (ADawn@), individually
and as the executrix of Perry=s estate, now challenges that final
appointment order.  Dawn raises four procedural issues challenging the probate
court=s jurisdiction to
sign the final order of appointment.  Appellee, Michael Easton (AEaston@), who claims to
be an assignee of certain claims not before this Court, challenges a show-cause
order signed by the probate court against him.  We affirm.

I.  BACKGROUND

This case has a complex and lengthy history.  There have
been multiple mandamus proceedings and a direct appeal from prior orders signed
by the probate court.[1] 
We discuss only the portion of the case history that is relevant to the issues
before us. 

On April 15, 2005, Jeanie Anderson (AJeanie@) and Robert
Daniel Whatley (ARobert@) initiated this
guardianship proceeding under Section 682 of the Texas Probate Code, seeking a
guardianship over the person and estate of their 82 year-old uncle, Perry.  On
May 10, 2005, Perry and Dawn, his wife of four months, filed responses opposing
the application and requesting in the alternative the appointment of Dawn as
Perry=s guardian. 
Beginning in August 2005, Dawn began a series of motions to recuse and
disqualify the probate court judge, Michael Wood, as well as the administrative
judge, Guy Herman.  Initially, Dawn filed motions against Judge Wood on August
3, 2005 (amended on August 8, 2005), September 9, 2005, and September 12,
2005.  The case was also removed to federal court several times and remanded
back to the probate court.  








On September 29, 2005, Judge Wood appointed appellee, Mylus
James Walker, Jr. (AWalker@), as the
temporary guardian over the person and estate of Perry.  On October 13, 2005,
Judge Wood signed an order reaffirming the appointment of Walker as Perry=s temporary
guardian.  On December 12, 2005, Dawn filed a petition for writ of mandamus
with this court challenging Judge Wood=s September and
October 2005 orders (collectively Atemporary
guardianship orders@).  Two days later, on December 14, 2005,
Judge Wood signed a final order appointing Walker as the permanent guardian of
Perry=s estate and
Jeanie permanent guardian over Perry=s person (Apermanent
guardianship order@).  Dawn and Perry filed a direct appeal
attacking the permanent guardianship order. 








On June 1, 2006, this court granted mandamus relief on Dawn=s December 12,
2005 petition for writ of mandamus.[2] 
In the mandamus proceeding, this court reviewed the temporary guardianship
orders as well as the permanent guardianship order.  We concluded that Judge
Wood erroneously signed all three orders while a motion to recuse Judge Wood
was pending.  We further concluded that the September 29, 2005 temporary
guardianship order was signed after the case had been removed to federal
court.  Accordingly, we declared all three appointment orders void.[3] 
On June 6, 2006, five days after we issued our mandamus opinion on the
appointment orders, Judge Gladys Burwell, the judge assigned to hear the
pending motion to recuse Judge Wood, denied the September 9, 2005 recusal
motion.[4] 
On September 28, 2006, the direct appeal challenging the permanent guardianship
order was dismissed in light of our mandamus opinion declaring the order void.  See
In re Whatley, No. 14-05-1222-CV, 2006 WL 2948230 (Tex. App.CHouston [14th
Dist.] Oct. 13, 2006, orig. proceeding). 

Judge Wood set the case for a final hearing and notified
the parties of the hearing date, which was set for October 16, 2006.[5] 
As scheduled, Judge Wood conducted the final hearing on October 16, 2006. 
Neither Dawn nor Perry, nor their counsel, appeared at this hearing.[6] 
After considering the evidence, Judge Wood signed an order finding Perry
incapacitated and appointing Jeanie the permanent guardian of Perry=s person and
Walker the permanent guardian of Perry=s estate.  Jeanie
timely filed a motion to modify the final appointment order to include a
finding, pursuant to Texas Rule of Civil Procedure 18a, that good cause existed
to proceed with trial even if a motion to recuse remained pending.  On January
11, 2007, the trial court signed a modified appointment order that included a Agood cause@ finding (Afinal appointment
order@).  Perry, Dawn,
and Easton filed a notice of appeal challenging, among other orders, the final
appointment order.  








On January 16, 2007, Perry, Dawn, and Easton filed an
amended notice of appeal and a motion for new trial, which included another
motion to recuse Judge Wood.  On February 14, 2007, Perry died, and Dawn,
thereafter, filed a second amended notice of appeal, removing Perry as an
appellant and adding Dawn, individually and as executrix of Perry=s Estate, as an
appellant.[7] 
Dawn then either joined or filed two additional motions to recuse Judge Wood,
on April 19, 2007 and November 17, 2007.[8] 
On February 5, 2008, Judge Olen Underwood signed an order recusing Judge Wood
from the case.  The crux of this appeal involves the propriety of Judge Wood=s final
appointment order signed January 11, 2007 and other orders signed prior to his
recusal.

II.  ISSUES PRESENTED[9]

Dawn does not challenge the probate court=s finding that
Perry was incapacitated or its selection of the guardian.  Instead, Dawn brings
three procedural issues challenging the probate court=s authority to sign
the final appointment order.  Dawn states the following three issues on appeal:

1.       Did the Probate Court ever acquire
jurisdiction over the person and the estate of Perry Lee Whatley which allowed
it to appoint a temporary, and then permanent, guardian?

2.       Could a disqualified trial judge in
exercising Adiscretion@ enter a new judgment one working
day after he reacquired jurisdiction, as the case was in the Court of appeals
until October 13, 2006?

3.       Could a visiting Judge overrule his own
motion to recuse and disqualify and then enter orders and judgments from
outside the County seat?

Easton has challenged a show-cause order signed by Judge
Wood addressing emails allegedly sent by Easton and states the following as his
issue for this appeal:

Can a trial judge be a witness, an accuser, a prosecutor, and the
fact-finder in a case of criminal contempt; then, after admitting that the
person he is personally accusing of the contempt was not served with a show
cause order, can that judge issue a writ of attachment commanding the arrest of
the accused without bond - in violation of both the State and the Federal
Constitutions - and while the judge is laboring under constitutional disqualification?








III.  ANALYSIS[10]

In her first issue, Dawn challenges the probate court=s jurisdiction to
sign the final order of appointment and any other orders by claiming that
Perry, Dawn, Walker, and Black were not properly served. 

A.      Service of
Process 

Before a court may enter judgment against a party, the
court must have obtained jurisdiction over that party pursuant to applicable
rules or statutes.  See Tex. R. Civ. P. 124; Ross v. Nat=l Center for the
Employment of the Disabled, 197 S.W.3d 795, 796B97 (Tex. 2006); Vance
v. Davidson, 903 S.W.2d 863, 866 (Tex. App.CHouston [14th
Dist.] 1995, orig. proceeding).  A trial court=s jurisdiction is
a question of law an appellate court reviews de novo by examining the
pleadings and any other evidence relevant to the determination.  In re
Erickson, 208 S.W.3d 737, 740 (Tex. App.CTexarkana 2006, no
pet.).  In general, jurisdiction over a party is acquired by voluntary
appearance, service of process as provided by law, or waiver of service.  See
Tex. R. Civ. P. 124 (AIn no case shall judgment be rendered
against any defendant unless upon service, or acceptance or waiver of process,
or upon an appearance by the defendant, as prescribed in these rules, except
where otherwise expressly provided by law or these rules.@); Werner v.
Colwell, 909 S.W.2d 866, 869B70 (Tex. 1995).


In addition to the civil service of process requirements
articulated under the civil procedure rules, the Probate Code prescribes
further service requirements specific to guardianship proceedings. 
Specifically, Section 633 of the Probate Code provides in relevant part:

(a)     On the filing of an application for
guardianship, notice shall be issued and served as provided by this section.








.         .        . 

(c)     The sheriff or other officer shall
personally serve citation to appear and answer the application for guardianship
on:

(1)     a proposed ward who is 12 years of age or
older;

.         .        . 

(3)     any court-appointed conservator or person
having control of the care and welfare of the proposed ward;

(4)     a proposed ward=s spouse if the whereabouts of the
spouse are known or can be reasonably ascertained; and 

(5)     the person named in the application to be
appointed guardian, if that person is not the applicant.

 

Tex.
Prob. Code '' 633(a), (c).  Failure to serve the proposed ward with
citation is jurisdictional, and a court=s subsequent order
appointing a guardian without proper service  on the ward is void.  See In
re Erickson, 208 S.W.3d at 740 (Aonly through
compliance with Section 633 of the Texas Probate Code is the trial court=s jurisdiction
invoked@).  The Code
further provides that a person other than the proposed ward may waive
receipt of notice or the issuance and personal service of citation.  Section
633(e) provides:

A person other than the proposed ward who is entitled to receive notice
or personal service of citation under Subsections (c) and (d) of this section may
choose, in person or by attorney ad litem, by writing filed with the clerk, to
waive the receipt of notice or the issuance and personal service of citation.

 

Tex.
Prob. Code ' 633(e).  The Probate Code prohibits waiver of service
by the proposed ward, but permits waiver of citation by other persons entitled
to service of process.  See id. 








Dawn argues that the probate court never invoked
jurisdiction over herself, Perry, Ray Black, or Walker because they were not
properly served.  With respect to Perry, the record reflects that after several
attempts to locate him, he was personally served with citation by a constable
on September 20, 2005 in a Massachusetts hospital.  Likewise, the record before
us reflects that Dawn was personally served with citation by a constable on May
11, 2005.  Thus, the probate court=s jurisdiction
over Perry and his estate was properly invoked.

Moreover, Black, the attorney ad litem, was not required to
be served because he did not fall within the list of those upon whom citation
must be served.  See Tex. Prob. Code Ann. ' 633(c) (1)-(5). 
Likewise, Walker was not required to be served because he was not Athe person named
in the application to be appointed guardian.@  Tex. Prob. Code
Ann. ' 633(c) (4), (5). 
Even if Black and Walker were required to be served, however, both Black and
Walker filed multiple pleadings with, and personally appeared before, the
probate court without objecting to any lack of service of citation.  A general
appearance in the case is a waiver of service of process.  See Tex. R.
Civ. P. 121 (stating that an answer shall constitute an appearance Aso as to dispense
with the necessity for the issuance or service of citation@); Adcock v.
Sherling, 923 S.W.2d 74, 79 (Tex. App.CSan Antonio 1996,
no pet.).  The lower court, therefore, had jurisdiction to hold the
guardianship hearing.

B. 
ASecond@ Guardianship
Proceeding

Although her briefing is not entirely clear, Dawn appears
to additionally argue that the probate court lacked jurisdiction over the
parties in this case because our opinion voiding the temporary guardianship
orders and permanent guardianship order of December 14, 2005 terminated the
guardianship proceeding that was originally filed on April 15, 2005 and in
turn, created a second guardianship proceeding requiring service of process,
once again, on Perry, Dawn, Black, and Walker.  To support this particular
argument, Dawn relies on a letter dated October 19, 2006 and statements made by
Judge Wood at the August and October 2006 hearings.  

On October 19, 2006, Judge Wood sent a letter to this Court
notifying us that he was in receipt of our mandamus opinion, and states in
relevant part:








All parties have given full effect to the June 1, 2006 Order.  The
guardianship terminated that day.  Neither the guardian nor the attorney ad
litem for the ward have seen him since that day; the ward=s present whereabouts and condition
are unknown.

 

Dawn also points to statements made by Judge Wood at the
August and October 2006 hearings that the case was a Anew guardianship
proceeding.@  We do not interpret either statement to mean that
the entire proceeding was terminated or that the application for a guardianship
had been dismissed.  Instead, Judge Wood indicated that the guardianship appointments
had been terminated.  The probate court=s statements in
the letter simply reassured this Court that the probate court was in compliance
with our ruling set forth in the mandamus opinion.  Additionally, neither a
nonsuit nor other order to terminate or remove the cause from the lower court=s docket was
signed, and the proceeding maintained the same cause number, 355,095. 

Accordingly, the probate court had jurisdiction over Perry,
Dawn, Black, and Walker in cause number 355,095, the only guardianship
proceeding before the lower court.[11] 
We overrule Dawn=s first issue.

C.      Ruling on
the Motion to Recuse While The Direct Appeal Was Pending 

In her second issue, Dawn challenges Judge Burwell=s authority to
rule on the September 9, 2005 motion to recuse Judge Wood on the following
bases:  (1) Judge Burwell lacked authority to deny the motion to recuse while
the direct appeal remained pending with this Court; (2) there was not an order
of assignment authorizing Judge Burwell to rule on the motion; (3) Judge
Burwell acknowledged in an affidavit that her involvement in the case
terminated on November 3, 2005; and (4) Judge Burwell erroneously signed the
recusal order outside of the county seat.








1.  The Pending Appeal

Dawn is correct that there was a direct appeal filed from
the probate court=s December 14, 2005 order appointing a
guardian.  In dismissing that appeal, this Court held that we lacked
jurisdiction over the appeal because the December 14, 2005 order was declared
void in our prior mandamus proceeding.  In re Guardianship of Whatley, No. 14-06-0079-CV, 2006 WL 2771879
(Tex. App.CHouston [14th Dist.]. Sept. 28, 2006, no pet.) (mem. op.).  Dawn relies
on the general rule that once an appeal is perfected, an appellate court, with
certain exceptions, has exclusive jurisdiction over the cause.  See, e.g., Saudi
v. Brieven, 176 S.W.3d 108, 113B14 (Tex. App.BHouston [1st Dist.] 2004, pet. denied).  However, the cases
on which Dawn relies do not support the proposition that a trial court has no
authority to continue probate proceedings while a voided order is appealed in a
separate appeal.  These cases are not on point, and under our set of facts, do
not mandate that a probate court=s authority is so restricted.

In a proceeding governed by the Texas Probate Code, there
are often multiple phases and stages of the case that must be resolved.  This
fact has often made it difficult for courts and parties to determine when a
final order has been entered that can be appealed.  See DeAyala v. Mackie,
193 S.W.3d 575, 578 (Tex. 2006) (noting justification for allowing review of
intermediate decisions in probate case so that error does not harm later phases
of proceeding).  In a guardianship case, in particular, there are multiple
stages to the proceeding, and the appointed guardian and probate court have
continuing duties even after an appeal is filed.  See, e.g., Tex. Prob.
Code ' 655 (pending
appeal from order appointing a guardian, appointee shall continue to act as
guardian and shall continue prosecution of pending suit in favor of
guardianship); Tex. Prob. Code ' 671(a), (b) (judge has duty to examine,
at least annually, well-being of ward); Tex. Prob. Code ' 672 (court must
review annually whether guardianship should be continued, modified, or
terminated).  








The facts of this case are similar to those in Mellinger
v. Nicholson, 142 S.W.2d 307 (Tex.Civ.App.CGalveston 1940,
writ dism=d judgm=t cor.).  In Mellinger,
the county court sitting in probate appointed an administrator of the estate of
the deceased.  142 S.W.2d at 307.  The administrator later filed an application
to resign.  Id. at 307B08.  The county court accepted the
resignation, approved the administrator=s final
accounting, and ordered the estate turned over to another individual.  Id.
at 308.  Certain parties interested in the estate appealed the county court=s order to the
district court.  Id.  While the appeal was pending, the county court
appointed a successor administrator, who later resigned, and then appointed
another temporary and permanent administrator.  Id.  On appeal, the
question before the court was whether the lower court had the Aauthority, power,
and jurisdiction@ to appoint the successor administrator.  Id.
at 309.  The court found that it did because, inter alia, the appeal did
not involve the validity of the resignation of the prior administrator but only
the acceptance of the final account and his discharge from liability.  Id. 
In other words, the lower court could continue its probate court duties because
the appeal did not involve those actions.

Likewise, Judge Burwell could rule on the September 9, 2005
motion to recuse notwithstanding the existence of the direct appeal.  The
direct appeal did not involve the September 9, 2005 motion to recuse on which
Judge Burwell ruled.  The direct appeal involved a claim by Dawn that the
probate court had no jurisdiction over the person and estate of Perry because
of an alleged lack of personal service of citation.  We hold that, under the
unique facts of this case, Judge Burwell could rule on the September 9, 2005
motion.  See id.

2.       Order of Assignment to Judge Burwell and Her
Affidavit. 

Contrary to Dawn=s argument, Judge
Burwell acted pursuant to a valid order of assignment.  Shortly after the
September 9, 2005 motion to recuse was filed, Judge Steve King, Presiding Judge
of the Statutory Probate Courts of Texas, issued a Minute Order assigning Judge
Burwell to hear the September 9, 2005 motion.  The order of assignment
expressly states:








IT IS THEREFORE ORDERED that the HONORABLE GLADYS B. BURWELL, Statutory
Probate Judge of the Probate Court of Galveston County, Texas, is hereby
assigned to hear [Perry Lee Whatley and Dawn Johnson Whatley=s Motion to Disqualify/Recuse The
Honorable Mike Wood] in the above-referenced and numbered cause with all
rights, powers and privileges held by the regular judge of the court assigned.

 

The order does not impose a deadline or time limit for
Judge Burwell to rule on the motion to recuse.  The order remained in force at
the time Judge Burwell ruled on the September 9, 2005 motion.  Therefore, there
was a valid order of assignment authorizing Judge Burwell to rule on the recusal
motion.  

Dawn, however, does not acknowledge Judge King=s order of
assignment, but relies on an affidavit filed by Judge Burwell on March 1, 2006,
which states that she was appointed on September 9, 2005 and September 12, 2005
to preside over a motion to recuse and that she ruled on November 2, 2005. 
Although Judge Burwell thought, at the time this affidavit was drafted, that
she had completed her rulings, our court issued an opinion in the mandamus
proceeding finding that she had ruled only on the September 12, 2005 motion. 
After our opinion issued, Judge Burwell ruled on the September 9, 2005 motion. 
The affidavit of Judge Burwell does not establish that her appointment to hear
the September 9, 2005 motion had lapsed; it establishes only that she was
mistaken as to whether both motions had been ruled upon.  Her subsequent ruling
on the September 9, 2005 motion acknowledges this fact and was permitted by the
Minute Order appointing her to hear the motion.  

3.       Signing the Order in Clear Lake

Finally, Dawn argues that Judge Burwell=s order denying
the September 9, 2005 motion was not effective because the order reflects that
she signed the order in Clear Lake City, Texas, outside the county seat.  This
argument is also without merit.  Because the record reflects that Judge Burwell
did not conduct any proceedings outside of the county seat, her order is not
void.








In Mellon Service Co. v. Touche Ross & Co., this
Court addressed whether a visiting judge assigned to hear a case in Harris
County, Texas could hear oral argument on a motion for summary judgment in
Galveston County, Texas consistent with article V, ' 7 of the Texas
Constitution.  946 S.W.2d 862, 863 (Tex. App.CHouston [14th
Dist.] 1997, no writ).  We held that a summary judgment hearing met the
definition of a proceeding for purposes of article V, ' 7 and thus had to
be conducted in the county seat.  Id. at 869.  However, in Burns v.
Bishop, we clarified what acts constitute article V, ' 7 proceedings
that must be heard in the county seat.  48 S.W.3d 459, 464 (Tex. App.CHouston [14th
Dist.] 2001, no pet.).  We explained that not every act taken or thought
pondered by a visiting or assigned judge must be carried out in the county
seat.  Id.  AWe do not believe Mellon means to
include mental processes of judges in its interpretation of >proceedings.=@  Id.  Nor
does it include the task of signing orders on motions.  Id. at 465.  AAppellants=s interpretation
of >proceedings= would require the
State of Texas to pay judges to travel from county to county merely to sign
their names or to review copies that could be delivered, faxed, or e-mailed.@  Id.  The
record reflects that Judge Burwell signed an order denying the motion from
Clear Lake City.  Judge Burwell was not required to be at the county seat at
the time she signed the order denying the September 9, 2005 motion to recuse.  See
id.

Judge Burwell had the authority to rule on the September 9,
2005 motion to recuse.  She denied that motion on June 6, 2006.  We overrule
Dawn=s second issue.

D.      Judge Herman=s Rulings On His
Motions to Recuse and Disqualify

In her third issue, Dawn argues that Judge Guy Herman erred
when he ruled on the motion to disqualify filed against him by Dawn and the
motion to recuse filed by Easton.  Dawn further contends, without explanation,
that the error is dispositive of the appeal.

1.       Dawn=s Motion to
Disqualify Judge Herman








Dawn filed a motion to disqualify Judge Herman in his
capacity as an individual judge and as the administrative judge on July 21,
2006.  Judge Herman dismissed the motion on July 27, 2006 on the basis that the
motion was procedurally defective.  Judge Herman determined that the motion was
untimely filed and that there was no statutory authority to disqualify the
Presiding Judge of the Statutory Probate Courts in his administrative capacity.


This Court recently addressed a similar issue in Guilbot
v. Estate of Vallejo, 267 S.W.3d 556 (Tex. App.CHouston [14th
Dist.] 2008, pet. filed).  Guilbot also involved an order of Judge
Herman ruling on his own motion to recuse.  Id. at 559.  We stated, ATexas law is clear
that, when faced with a motion to recuse, a judge has only two options: grant
the motion to recuse or refer the motion to another judge for a ruling.@  Id. at
561.  When Judge Herman ruled on his own motion to recuse, he erred and should
have instead referred the motion to the Chief Justice of the Texas Supreme
Court.  Id. (citing Tex. Gov=t Code Ann. ' 74.057(a) and
Tex. R. Civ. P. 18a(g)).  Likewise, Judge Herman erroneously ruled on
the motion to disqualify and should have referred the motion to the Chief
Justice of the Texas Supreme Court.  Id.  Following our decision in Guilbot,
we conclude that Judge Herman erred in ruling on Dawn=s motion to
disqualify him.  Finding Judge Herman=s ruling to be
error, we must now determine if such error requires reversing this appeal.  See
id. at 562B63.

2.       Judge
Herman=s Error

The August 3, 2005, September 9, 2005, and September 12,
2005 motions were all disposed of prior to the final order at issue in this
appeal.[12] 
Our review of the record shows that, once any orders signed by Judge Herman
after the motion to disqualify him was filed are declared void, there remained
pending at the time of the final order signed by Judge Wood the following: (1)
a motion to disqualify Judge Wood filed by Dawn on June 6, 2006; and (2) a
motion to recuse and disqualify Judge Wood filed by Easton on September 17,
2006.  Both motions are tertiary and did not prevent Judge Wood from signing
the final order.[13]








Section 30.016 of the Texas Civil Practice and Remedies
Code provides that a trial court may continue to dispose of a case even after a
motion to recuse is filed, if the motion is a tertiary motion.  The version of
Section 30.016 in effect at the time the final order in this case was signed,
titled Recusal or Disqualification of Certain Judges, provided in pertinent
part as follows:

(a)     In this section, Atertiary recusal motion@ means a third or subsequent motion
for recusal or disqualification filed against a district court, statutory
probate court, or statutory county court judge by the same party in a case.

(b)     A judge who declines recusal after a
tertiary recusal motion is filed shall comply with applicable rules for
procedure for recusal and disqualification except that the judge shall continue
to:

(1)     preside over the case;

(2)     sign orders in the case; and 

(3)     move the case to final disposition as though
a tertiary recusal motion had not been filed.

 

Tex.
Civ. Prac. & Rem. Code ' 30.016.[14] 
The June 6, 2006 motion to disqualify Judge Wood was the fourth motion filed by
Dawn against Judge Wood.  It thus satisfies the definition of a tertiary
recusal motion and did not prevent Judge Wood from moving the case to Afinal disposition
as though a tertiary recusal motion had not been filed.@  Id.








Furthermore, Judge Wood modified his order to reflect the
good cause required under Texas Rule of Civil Procedure 18a for proceeding with
a ruling when a motion to recuse is pending.  Rule 18a(d) provides that, where
a judge declines to recuse himself, he must refer the motion to recuse and,
except for good cause stated in the order in which further action is taken,
shall make no further orders and take no further action in the case.  Tex. R.
Civ. P. 18a(d).  Judge Wood modified his final order of appointment to reflect
the necessary good cause finding. 

We acknowledge that Section 30.016(e) provides that if a
tertiary recusal motion is finally sustained, the new judge for the case shall
vacate all orders signed by the sitting judge during the pendency of the
tertiary recusal motion.  Tex. Civ. Prac. & Rem. Code Ann. ' 30.016(e).  We
also recognize that Judge Olen Underwood did ultimately recuse Judge Wood on
February 5, 2008 while this case was on appeal.  Dawn and Easton filed a motion
to dismiss the current appeal on the basis of Judge Underwood=s order of
recusal, claiming that the order rendered void (and thus not appealable) any
order signed by Judge Wood.  We disagree.  Judge Underwood=s recusal order
states that he was ruling on the AMotion to Recuse@ filed pursuant to
Rule 18a.  The only pending motions to recuse Judge Wood at the time Judge
Underwood ruled were motions filed after the final order was signed.  The final
order appealed from in this case was not signed during the pendency of the
recusal motion that was ultimately sustained.  Thus, the final order does not
have to be vacated under Section 30.016(e). 

3.       Easton=s Recusal Motion

Easton filed a motion to recuse Judge Herman on April 27,
2006.  Easton, however,  had no standing to file a motion to
recuse any judge in the guardianship proceeding.  Thus, his motion to recuse
was ineffective, and Judge Herman was not required to rule on that motion.








Texas Rule of Civil Procedure 18a provides that a party
may file a motion to recuse.  Tex. R. Civ. P. 18a(a).  The First Court of
Appeals has recently held that, under Rule 18a, a motion to recuse filed by a
non-party does not satisfy Rule 18a and thus need not be referred before
proceeding with the case.  Bell v. State, No. 01-05-1180-CR, 2006 WL
3628916, at *6 (Tex. App.CHouston [1st Dist.] Dec. 14, 2006, no
pet.) (mem. op.).  We agree with the Bell court=s reasoning and
hold that a motion to recuse filed by a person with no justiciable interest in
the case is not effective and does not have to be ruled upon or referred before
a court may continue with the case.

Easton claims to have an assignment from Dawn of certain of
her claims.  We do not rule on the validity of this assignment as it has not
been raised as an issue in this appeal.  We do find, however, that,
notwithstanding any assignment of certain claims, Easton does not have a
justiciable interest in the guardianship proceeding and thus is not considered
a party for purposes of a Rule 18a motion to recuse.  On February 17, 2006,
Easton stated in open court,  AI don=t have an interest
in Mr. Whatley=s guardianship.@ At another
hearing on March 2, 2006, the following exchange occurred:

Court: Now, saying that, I wonder
what it is that you think you can have assigned to you.  Do you think you can
have a contest assigned to you?

Easton:        No, sir.

Court: So, you=re not here on a contest?

Easton:        No, sir.

 

These statements reflect Easton=s own admissions
that he has no justiciable interest in the guardianship proceeding.  The
guardianship proceeding is the only claim at issue in this appeal.  Any motion
to recuse filed by Easton against Judge Herman or Judge Wood with respect to
the guardianship proceeding was, therefore, ineffective.  See Tex. R.
Civ. P. 18a; Bell, 2006 WL 3628916, at *6.








Easton additionally claims that his standing in this case
cannot be challenged because no one filed a verified denial of capacity under
Texas Rule of Civil Procedure 93.  Easton is correct that the record does not
reflect a challenge to capacity under Rule 93.  Easton=s right to file a
motion to recuse, however, is predicated on the existence of a justiciable
interest in the case. Whether Easton had the capacity to sue is not the issue. 
The question of whether a party has a justiciable interest in a case is a
question of standing that can be raised at any time, even on appeal.  See
Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 849 (Tex. 2005).  To
have standing, and thus a justiciable interest in a case, there must be: A(1) a real
controversy between the parties,@ that (2) Awill be actually
determined by the judicial declaration sought.@ Id.  Easton
has no standing in the case because there is no real controversy between him
and Walker with respect to the guardianship over Perry that will be determined
in the guardianship proceeding.  Because Easton has no justiciable interest in
the guardianship proceeding, his motions to recuse in that proceeding are
ineffective.

Although we agree Judge Herman erred when he ruled on his
own recusal motion, we find that the error is not reversible.  Accordingly, we
overrule Dawn=s third issue.

E.      Easton=s Challenge to the
Show-cause Order

In issue four, Easton challenges the probate court=s show-cause order
and accompanying writ of attachment issued against him.  In the argument
section of his brief, Easton includes many statements and allegations that do
not pertain to the show-cause order, thus making it difficult to discern the
exact bases of Easton=s challenge.  He does, however, complain
that there were pending motions to recuse Judge Wood at the time that Judge
Wood issued the show-cause order.  He also complains that the show-cause order
was not personally served on him before the arrest warrant was issued, thus
making it void.  We hold that the probate court=s show-cause order
was not void based on any motions to recuse and that Easton has no right to
relief because he has never been held in contempt and has suffered no adverse
ruling.  Moreover, Easton will suffer no adverse ruling because the writ of
attachment has expired.  We, therefore, overrule Easton=s issue.

1.       The
show-cause order and writ of attachment

On February 7, 2006, Judge Wood issued an order with the
following:

On this day the Court on its own motion orders that all counsel,
specifically including Michael Easton, pro se, are to cease and desist using
Judge Mike Wood=s personal email address.  Such
action constitutes ex parte communication with Judge Wood.  

 








Easton
then filed a motion to vacate the order, claiming he had no advance notice, no
opportunity for hearing, and he was denied due process.  The court held a
hearing on the motion to vacate the February 7 order and expressly told Easton
in court that sending an email to the judge=s personal address
would be an ex parte communication and that anyone sending him an email to his
personal address would be held in contempt.  The very next day, Easton
allegedly sent an email to Judge Wood=s personal email
address.  The court then issued a personal citation commanding Easton to appear
at a show-cause hearing on August 3, 2006.  Easton failed to appear, and the
trial court then issued a writ of attachment.  The sheriff was not able to
locate Easton to serve the writ, and it was returned unserved and expired on
December 4, 2006.  

2.       The
order was not void

Easton=s challenge to the show-cause order based
on any pending motions to recuse Judge Wood was the subject of his previous
writ of habeas corpus proceeding in this Court.  In re Easton, 203
S.W.3d 438 (Tex. App.CHouston [14th Dist.] 2006, orig.
proceeding).  As we held in In re Easton, any pending motions to recuse
would not prevent Judge Wood from issuing the show-cause order.  Texas Rule of
Civil Procedure 18a(d) states that while a recusal motion is pending Athe judge shall
make no further orders and shall take no further action in the case.@  Tex. R. Civ. P.
18a(d); In re Easton, 203 S.W.3d at 442.  By issuing the show-cause
order prohibiting ex parte communications, Judge Wood did not take any action
in disposing, adjudicating, or resolving any aspect of the guardianship
proceeding.  In re Easton, 203 S.W.3d at 442.  Thus, any pending motions
to recuse would not have rendered the show-cause order void.  Id.








Easton relies on Jamilah v. Bass, 862 S.W.2d 201
(Tex. App.CHouston [14th Dist.] 1993, orig. proceeding) in
support of his argument.  Jamilah is distinguishable.  In that case, the
trial court issued the show-cause order and set a contempt hearing.  Id.
at 201.  After receiving the notice of the contempt hearing, the party filed a
motion to recuse the judge from hearing the contempt proceeding.  Id. at
201-02.  The court held that the motion to recuse prevented the trial court
from hearing the contempt proceeding.  Id. at 203.  It did not hold that
the trial court was prevented from even issuing the show-cause order.  Id. 
Nothing in Jamilah prevented Judge Wood from issuing the show-cause
order in this case.  And, Judge Wood never held a contempt hearing because
Easton could not be located.  Thus, Jamilah provides no support for
Easton=s claim that the
show-cause order could not be issued.

3.       Easton=s appeal is moot

Easton also argues that Judge Wood should not have issued
the writ of attachment because Easton was not personally served with the
show-cause order, citing Ex-parte Briscoe, 561 S.W.2d 26 (Tex. App.CHouston [1st
Dist.] 1977, orig. proceeding) and In re Aguilera, 37 S.W.3d 43 (Tex.
App.CEl Paso 2000,
orig. proceeding).  These cases hold that a party must be served with a
show-cause order for the court to acquire jurisdiction over the contempt
proceeding.  These cases, however, do not support Easton=s issue on
appeal.  Because Easton has suffered no injury, and will suffer no injury from
the writ of attachment, his issue is moot.

As we held in In re Easton, the mere existence of
the writ of attachment did not infringe upon Easton=s liberty.  In
re Easton, 203 S.W.3d at 441.  Judge Wood never held Easton in contempt and
never assessed any punishment.  At the time we issued In re Easton,
there was no adverse ruling against Easton from which he could pursue a writ of
habeas corpus.  Id.  








There is still no adverse ruling against Easton, nor will
there be.  The writ of attachment was returned to the court on December 4, 2006
unserved and expired.  A writ of attachment that is not served before it
expires becomes functus officio, meaning it is without legal force or effect.  See
Ex Parte Arapis, 306 S.W.2d 884, 885B86 (Tex. 1957). 
Any claim Easton may have regarding the writ of attachment is moot.  See
Allstate Ins. Co. v. Hallman, 159 S.W.3d 640, 642 (Tex. 2005) (AA case becomes
moot if a controversy ceases to exist or the parties lack a legally cognizable
interest in the outcome.@); see also Davison v. Lane, 350
S.W.2d 244, 248 (Tex. Civ. App.CWaco 1961, no writ) (finding that alleged
wrongful issuance of writ of attachment against cattle became moot question
where cattle owner had suffered no damage).  Moreover, any alleged error in
issuing the writ of attachment would be harmless; there has been no rendition
of an improper judgment against Easton.  See Tex. R. App. P. 44.1(a)(1)
(stating appellate court cannot reverse based on trial court error unless error
complained of Aprobably caused the rendition of an improper judgment.@).  Because Easton=s challenge to the
show-cause order is without merit, we overrule his issue.

F.  The Ancillary Appellate Motions are Overruled

The
following motions have been filed by Dawn and Easton and remain pending:
Appellants= Motion to Strike Exhibits to Appellee=s Brief; Appellants= Emergency Motion to Set the Case for
Submission and to Render; Appellants= Motion for Sanctions (filed August
1, 2007); Appellants= Motion to Recalendar the Cause and Dismiss the Appeal for
Lack of Jurisdiction; Appellants= Motion to Dismiss (filed February
22, 2008); Appellants= Motion for Appointment of a Special Master; and Appellants= Motion for Sanctions and Reply to
Appellee=s Response to Dismiss Appeal (filed
March 12, 2008).  The Motion to Strike Exhibits to Appellee=s Brief, the Motion to Recalendar the
Cause, and the Emergency Motion to Set the Case for Submission and to Render
are denied as moot.

Appellants= motions to dismiss the appeal and render
judgment in their favor are based on the claim that Judge Underwood=s order granting
recusal of Judge Wood made the final order being appealed void.  We overrule
Appellants= motions to dismiss the appeal for the reasons set
forth earlier in this opinion.








Appellants also filed a request for sanctions, claiming
that Walker lied to this Court in his opposition to the motion to dismiss by asserting
that appellants did not have record support for their argument.  It is true
that some of the items Walker claimed were missing from the record are in fact
in the record.  Walker admitted this fact in his opposition to the request for
sanctions, stating that the documents were merely overlooked.  After reviewing
the record, the Court can attest that the clerk=s record in this
case is large, voluminous, and convoluted.  There are seventeen volumes of
clerk=s record, most of
which are groups of supplemental volumes with indices only in the first
volume.  Many of the documents necessary for review are attachments, requiring
the reader to page through documents that do not seem relevant.  It is easy to
overlook documents in the record, and we find no basis for imposing sanctions. 
The motions for sanctions are denied.

Finally, Appellants ask the Court to appoint Retired Chief
Justice Paul Murphy as a special master to conduct a hearing into the truth of
assertions contained in affidavits filed in response to certain motions on
appeal.  We deny this request.  Our disposition of this appeal is based on the
record only.  Any alleged misstatements contained in documents outside the appellate
record are irrelevant to the issues on appeal.  The motion to appoint a special
master is denied.

IV.  CONCLUSION

The probate court had jurisdiction over the person and
estate of Perry Whatley at the time the final guardianship order was signed. 
There were no procedural impediments to the entry of the final order at issue
in this appeal.  Easton=s challenge to the show-cause order and
writ of attachment are without merit.  We, therefore, overrule appellants= issues and affirm
the probate court=s order.

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

 

Panel consists of Chief Justice Hedges and Justices Yates
and Brown.









[1]  Additionally, the parties in this case have filed
other litigation against each other in both state and federal court, some of
which are still pending.  Those related causes have been assigned different
cause numbers.  See In re Easton, Nos. 01-07-00488-CV, 01-07-00490-CV,
2007 WL 1953883 (Tex. App.CHouston [1st
Dist.] July 6, 2007, orig. proceeding) (mem. op.); In re Norman,
14-06-00488-CV, 2006 WL 2947845 (Tex. App.CHouston
[14th Dist.] Oct. 13, 2006, orig. proceeding) (mem. op.); In re Whatley,
14-06-00843-CV, 2006 WL 2882789 (Tex. App.CHouston
[14th Dist.] Oct. 12, 2006, orig. proceeding) (mem. op.); In re Whatley,
14-06-00079-CV, 2006 WL 2771879 (Tex. App.CHouston
[14th Dist.] Sept. 28, 2006, no pet.) (mem. op.); In re Whatley,
14-06-00699-CV, 2006 WL 2689701 (Tex. App.CHouston
[14th Dist.] Sept. 21, 2006, orig. proceeding) (mem. op.); In re Easton,
203 S.W.3d 438 (Tex. App.CHouston [14th Dist.] 2006, orig. proceeding); In re
Whatley, No. 14-05-01222-CV, 2006 WL 2257399 (Tex. App.CHouston [14th Dist.] Aug. 8, 2006, orig. proceeding)
(supp. mem. op. on reh=g.); In re Whatley, 14-05-01222-CV, 2006 WL
1490161 (Tex. App.CHouston [14th Dist.] June 1, 2006, orig. proceeding)
(mem. op.),withdrawn and superceded by, In re Whatley, No.
14-05-01222-CV, 2006 WL 2948230 (Tex. App.CHouston
[14th Dist.] Oct. 13, 2006, orig. proceeding) (mem. op.); In re Whatley,
No. 14-05-00826-CV, 2005 WL 3005730 (Tex. App.CHouston [14th Dist.] Nov. 10, 2005, orig. proceeding) (mem. op.).    

Because these related causes do not impact
our disposition, we do not address the issues raised in those causes. The
instant appeal involves only the guardianship orders specifically challenged in
the notice of appeal under cause no. 355,095. 





[2]  See In re Whatley, 2006 WL 1490161.  This opinion was supplemented and later withdrawn
and superceded by our October 13, 2006 memorandum opinion nunc pro tunc.  See
In re Whatley, 2006 WL 2948230.     





[3]  In our memorandum opinion nunc pro tunc that superseded the June 2006
memorandum opinion, we affirmed once more that the appointment orders were
void, concluding that Athe orders signed by Judge Wood on
September 29, 2005, October 13, 2005, and December 14, 2005, are void. 
Additionally, the September 29, 2005, order issued by Judge Wood is void
because Judge Wood had no jurisdiction to enter it while the case was removed
to federal court.@  Whatley, 2006 WL 2948230,
at *4.





[4]  In light of Judge Burwell=s ruling, Walker and Ray Black, attorney ad litem for
Perry, filed motions for rehearing in the mandamus proceeding.  The rehearing
motions were denied, and we issued a supplemental opinion confirming that Judge
Wood had erroneously signed the appointment orders while a recusal motion
remained pending.  Shortly after we
issued our opinion, Dawn filed another motion to disqualify Judge Wood.  Dawn also filed a motion to
disqualify Judge Herman on July 21, 2006, and Easton filed a motion to
disqualify Judge Herman on April 27, 2006.  On
August 13, 2006, Dawn filed another motion to disqualify Judge Wood. 





[5]  On October 13, 2006, this Court issued its mandate in the direct appeal
so that the hearing scheduled for October 16, 2006 could go forward.   





[6]  The attorney ad litem served the order setting the
hearing on counsel for Perry and Dawn.





[7]  In the Second Amended Notice of Appeal, Dawn is
listed individually and as executrix of Perry=s estate, and Perry is no longer listed as a party.  





[8]  The recusal motions that were filed after the final
appointment order were amended or supplemented on January 4, 2008, January 8, 2008,
and January 27, 2008. 





[9]  Dawn and Easton jointly raise four issues in their
brief.  However, as explained in detail below, only Dawn has standing and an
interest in issues one through three, while only Easton has standing to raise
the fourth issue.





[10]  We note that, due to the death of Perry, any appeal
of the order appointing a permanent guardianship over his person has become
moot.  Zipp v. Wuemling, 218 S.W.3d 71, 74 (Tex. 2007).  Because there
is a continuing dispute over who should settle the estate, however, Perry=s death does not moot the issue of the guardianship of
his estate.  Id.   Accordingly, we dismiss the issues and arguments
relevant to guardianship over the person of Perry.





[11]  Without citing relevant authority, Dawn insists that
the mandamus proceeding voided any order by the probate court from September 9,
2005 forward.  Such statement misrepresents our mandamus opinion.  We held that
the mandamus proceeding resulted in the declaration that three orders of the
probate court, the temporary appointment order, the order reaffirming the
temporary appointment, and the permanent appointment order, were void.  In
re Whatley, 2006 WL 2948230, at *4. This Court did not declare all subsequent
orders in the proceeding void.  





[12]  Motions to recuse were also filed against Gladys
Burwell and Russell Austin, the judges assigned to hear some of the recusal
motions.  The motions to recuse Judge Burwell and Judge Austin are not at issue
in this appeal.





[13]  Dawn claims in her motion to dismiss her own appeal
that there were five recusal motions pending at the time Judge Wood signed the
October 16, 2006 order appointing permanent guardian.  Dawn is incorrect.  The
record shows that only the two motions cited were pending.  There were several
motions filed after the final order in this case was signed; of course,
any post-order motions could not prevent the judge from signing the final
order.





[14]  Section 30.016 was amended after Perry=s guardianship proceeding was filed.  We, refer to the
version of Section 30.016 in effect at the time of filing.