**REPUBLIC INSURANCE COMPANY, Relator,**

v.

**The Honorable Richard W. MILLARD, Judge, Respondent.**

**No. C14–91–00570–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 27, 1992.

Jerry V. Walker, Houston, Terry O. Tottenham, Austin, for relator.

David W. Williams, W. Richard Ellis, III, Stephanie Nelson and Mark Wham, Houston, for respondent.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This mandamus action evolves from the trial court's application of the Texas "turnover" statute. We are presented with the following issues of first impression concerning the scope of this statute: 1) whether a third party may be included as a party defendant for the first time in a post-judgment turnover petition; and 2) whether a trial court can order a separate trial to determine the merits alleged in bad faith claims against that third party as part of a turnover order.

Relator, Republic Insurance Company, (Relator or Republic) petitions this court for writ of mandamus to order respondent, the Honorable Richard W. Millard, to rescind his order entered on June 5, 1991, in Cause No. 85–46145–A, a turnover action, pending in the 189th Judicial District Court of Harris County. Respondent incorporated relator, a non-party to the underlying original lawsuit, into a post-judgment turnover procedure and ordered a separate trial to litigate the merits of alleged bad faith and other causes of action against relator. Respondent also denied relator's plea in abatement to suspend the present proceedings because Travis County has dominant jurisdiction on the rights and claims to the reinsurance policy which was issued by relator to National County Life Insurance Company, the primary insurer. (National County.)

For the reasons hereinafter set out, we conditionally grant the writ as to the inclusion of relator both as a party to the turnover procedure and as a litigant in the separate trial ordered in respondent's court. We also direct the trial court to grant the plea in abatement so that all claims against relator can be litigated in Travis County.

The main case which spawned this turnover action is *Trevino, et al. v. Culver Concrete Co., Inc., et al.* In that case, the Trevinos recovered a judgment in respondent's court against Reginald Davis (Davis) and Culver Concrete Co., Inc. (Culver), his employer, for the wrongful death of their father who was killed in a truck collision. As stated, the primary insurance carrier for Culver and Davis was National County. It had a policy limit of $500,000.00. Relator, Republic, reinsured the first $50,000.00 for National County and Lincoln National Reinsurance Company reinsured the remaining $450,000.00.

During the pendency of the Trevinos' primary lawsuit, the State of Texas instituted insolvency proceedings against National County, pursuant to Article 21.28, *et seq.*, Texas Insurance Code, and a receiver was appointed by the 201st Judicial District of Travis County, Texas. In conjunction with the receivership proceedings, the court issued a permanent injunction prohibiting disbursement of National County's assets which included the reinsurance policy between National County and relator.

After the Trevinos obtained the judgment against Culver and Davis, the involved parties requested relator to pay the reinsurance policy proceeds directly to them. Concerned with conflicting claims between these parties and those of the receiver, relator filed a declaratory judgment suit on June 14, 1990, in the 261st District Court of Travis County, Texas, where exclusive statutory venue existed for the receivership proceedings of National County.

Nine months later, on March 15, 1991, the Trevinos filed a turnover petition pursuant to section 31.002 of the Texas Civil Practice and Remedies Code, commonly referred to as the "turnover" statute. This petition named Republic as a party defendant and sought title to Culver and Davis' alleged causes of action against relator for failure to defend them, failure to provide insurance coverage, and for other bad faith acts in the wrongful death suit. Shortly thereafter, Culver and Davis each filed separate cross-action suits in the turnover proceedings against Republic for refusing to settle the Trevinos' lawsuit within the reinsurance policy limits and for various other bad faith acts in connection with the lawsuit.

Respondent's order of June 5, 1991, turned over Culver and Davis' causes of action against Republic to the extent of the current judgment indebtedness owed to the Trevinos. This order also consolidated Culver and Davis' cross-actions with the Trevinos' turnover proceedings so that any excess recovery against Republic could be reserved for Culver and Davis. Respondent further mandated a separate trial in his court on the merits of all suits filed by these parties against Republic.

To issue writs of mandamus, we are guided by specific and narrow standards. We may issue all writs of mandamus which are agreeable to the principles of law regulating those writs. TEX. GOV'T CODE ANN. § 22.221(b) (Vernon 1988). Mandamus will issue to correct trial court actions only when there has been a clear abuse of discretion, particularly where remedy by way of appeal is inadequate. *Ayres v. Canales*, 790 S.W.2d 554, 556 (Tex.1990). Here, we have determined respondent abused his discretion by expanding the scope of the turnover statute beyond its purpose as a purely procedural device to assist judgment creditors in post-judgment collections.

The Texas turnover statute provides in pertinent part:

(a) a judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

(1) cannot readily be attached or levied on by ordinary legal process ...

(b) The court may:

(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control ...

(d) The judgment creditor may move for the court's assistance under this section

in the same proceeding in which the judgment is rendered or in an independent proceeding.

TEX.CIV.PRAC. & REM.CODE ANN. § 31.002 (Vernon 1986 & Supp.1991).

■ Texas courts do not apply the turnover statute to non-judgment debtors. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 227 (Tex.1991). In *Beaumont Bank,* the supreme court recognized that the turnover statute could only reach Mrs. Buller's assets in her capacity as representative of her husband's estate. Since the bank's judgment only applied to assets owned by her deceased husband's estate, the trial court improperly imposed liability on her individually in the turnover order. Here, relator, Republic, was not a party to the original wrongful death suit, yet it was added as a party defendant in the post-judgment turnover proceedings. Relator is neither a judgment creditor nor a judgment debtor and, therefore, is not an appropriate party to the turnover procedure.

The Trevinos, Culver and Davis maintain that the trial court's order is not only proper, but distinguishable from *Cravens, Dargan & Co. v. Travers Co., Inc.,* 770 S.W.2d 573 (Tex.App.—Houston [1st Dist.] 1989, writ denied) and *United Bank Metro v. Plains Overseas Group, Inc.,* 670 S.W.2d 281 (Tex.App.—Houston [1st Dist.] 1983, no writ). In *Cravens,* the court concluded that the turnover statute was an improper vehicle to determine whether the judgment debtor owned funds deposited with the State Board of Insurance. The judgment creditor was not permitted to bypass the statutory administrative remedies that would determine the ownership interests in the funds. Similarly, the court in *United Bank Metro* held that a turnover order was inappropriate because the judgment creditor attempted to relieve a third party corporation of property without first successfully piercing the corporate veil in a separate trial. On the contrary, the parties in the present case contend that the trial court specifically ordered a separate trial on the merits of the bad faith suits.

■ Nonetheless, the purely procedural nature of the Texas turnover statute is well settled in former case law and a review of the legislative history. *Cravens,* 770 S.W.2d at 576. The statute does not allow for a determination of the substantive rights of involved parties. *Id.* Its purpose is merely to ascertain whether an asset is either in the judgment debtor's possession or subject to the debtor's control. *Beaumont Bank,* 806 S.W.2d at 227. In our case, the trial court's decision to force a third party to litigate a substantive issue relating to asserted bad faith claims is not a correct application of the turnover order. This order enlarges the turnover statute's scope beyond the procedural vehicle contemplated by the legislation. We construe that the legislature's purpose in enacting the turnover statute was to facilitate the collection of assets from the judgment debtor to the judgment creditor.

■ Additionally, the Trevinos, Culver, and Davis argue that the legislature intended the turnover procedure to be either a post-judgment continuation of the original suit or an independent proceeding which includes "new" lawsuits, such as the cross-actions filed by Culver and Davis. They conclude a judgment creditor should have either option available. We construe the "independent proceeding" language in subsection (d) of the turnover statute as denoting simply the procedural manner in which the turnover action may be brought. To that extent, the judgment creditor does have the option to bring the turnover action as a post-judgment continuation of the original suit, as they did here, or as an independent action. However, we do not construe it as creating a right in the judgment creditors and debtors to initiate and incorporate in the proceeding an entirely different lawsuit against a third party who is not a part of the original judgment.

■ Nor is the turnover statute a super-venue device by which the original trial court can reach out and assume jurisdiction for trial purposes of potential lawsuits involving third parties. Obviously, then, in the context of this case, it cannot be used as a device by which the original trial court can wrest venue of a separate cause of action from the Travis County

District Court, which already has dominant jurisdiction.

The process establishing dominant jurisdiction in Travis County for the separate cause of action filed by Republic began when the delinquency proceedings against National County, the primary insurer, were initiated by the State of Texas in the 201st Judicial District Court of Travis County, where a receiver was appointed by that court. By virtue of art. 21.28 of the Texas Insurance Code, exclusive venue lay in Travis County for such proceedings. As to new lawsuits involving National County in receivership, the Texas Insurance Code provides that:

> (h) New Lawsuits. The court of competent jurisdiction of the county in which the delinquency proceedings are pending under this Article shall have exclusive venue to hear and determine all actions or proceedings instituted after the commencement of delinquency proceedings by or against the insurer or receiver.

TEX.INS.CODE ANN. art. 21.28, § 4(b) (Vernon 1991).

Thus, when Republic, as a limited reinsurer for National County, was enjoined by the Travis County District Court in the receivership proceedings from disbursing the reinsurance proceeds it held for National County, it tendered those proceeds to the court. Subsequently, the Trevinos, Culver and Davis made separate demands on Republic for those reinsurance proceeds as well as damages for alleged bad faith and D.T.P.A. claims against Republic in connection with the original wrongful death claim. Faced with this conflict, Republic filed a declaratory judgment action in Travis County seeking a determination of the claims to the reinsurance policy proceeds, as well as the alleged bad faith claims asserted against it in connection therewith. The Trevinos, Culver, and Davis subsequently filed answers in this cause. Claims were also filed by them in the liquidation proceedings of National County Mutual, but these were later withdrawn.

Approximately nine months after Republic filed the declaratory judgment action in Travis County, the Trevinos filed the turnover action in Respondent's court in Harris County against Culver, Davis, and Republic. Culver and Davis then filed separate cross actions against Republic in the same proceeding alleging these same bad faith and D.T.P.A. claims against Republic in connection with the original wrongful death claim of the Trevinos. Neither National County nor its receiver were named in the turnover action.

Republic responded by filing Pleas in Abatement and Special Exceptions both as to the turnover petition and the cross actions. It challenged being included in the turnover action and asserted the venue facts supporting the dominant jurisdiction of the Travis County District Court proceedings over the same claims now being asserted in the turnover action. While respondent did not specifically act on Republic's Plea in Abatement, it was implicitly denied by the order he entered.

Respondent, in his order, properly ordered a turnover to the Trevinos of all causes of action Culver and Davis might have now, or in the future, against any liability insurance carriers, specifically including Republic. Clearly respondent had the authority to enter such an order under the turnover statute. However, he did not have the authority under the turnover statute to assume jurisdiction over Republic in this turnover action and to order a consolidation and trial of the bad faith claims against it in his court.

We find, therefore, that the district courts of Travis County have dominant jurisdiction to hear these causes of action against Republic because they arise directly or indirectly from the reinsurance contract between Republic and National County. Further, we find it was an abuse of discretion for respondent to include Republic, a non-judgment third-party, in the turnover order and to assume jurisdiction over the trial of issues already pending in Travis County District Court.

Accordingly, we grant the petition for writ of mandamus and direct respondent to rescind that portion of his turnover order that incorporates relator into the turnover

proceedings as a party defendant and orders it to defend itself in a separate trial before respondent on the merits of the alleged bad faith and D.T.P.A. claims. We also order respondent to grant relator's plea in abatement because the Travis County District Court has dominant jurisdiction for any litigation involving the reinsurance policy proceeds, or bad faith claims against relator concerning its obligations under the reinsurance policy.

This judgment does not affect, in any way, that portion of respondent's order turning over all causes of action owned by Culver and Davis to the Trevinos.

We presume respondent will comply with the terms of this judgment. Mandamus will issue only should he fail to do so.