**Affirmed and Opinion filed May 23, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00237-CV

## SCOTT VAN DYKE AND ANGLO-DUTCH ENERGY, LLC, Appellants

### V.

## LITTLEMILL LIMITED, PROSPERITY SETTLEMENT FUNDING, INC., ROBERT M. PRESS, AND ANZAR SETTLEMENT FUNDING CORP., Appellees

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2004-20712**

## OPINION

This is an appeal of a release and turnover order. Appellants contend that the trial court erred in releasing and turning over to appellees all funds remaining in the court registry after the judgment in the underlying case was satisfied. Appellants argue that they are third-party secured creditors whose rights to the funds are superior to those of appellees, who are judgment creditors. Because we hold that the trial court erred by adjudicating appellants' substantive property

rights in a turnover proceeding, we reverse the trial court's order and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The history of the litigation among the parties is lengthy and complex. We recount only the facts relevant to the current dispute over the funds remaining in the court registry after the underlying judgment was satisfied.

### A. The Parties' Disputes Leading to the Underlying Judgment

Appellant Scott Van Dyke is an owner and president of appellant Anglo-Dutch Energy, LLC. Van Dyke is also the majority owner of Anglo-Dutch Petroleum International, Inc. (ADPI) and Anglo-Dutch (Tenge), LLC (ADT), the entities involved in the underlying lawsuit.

In 2000, ADPI and ADT sued Halliburton Energy Services, Inc. and another company. To finance the litigation and stay in business, ADPI and ADT entered into contracts with others to invest in the Halliburton lawsuit, including appellees Littlemill Limited, Prosperity Settlement Funding, Inc., Robert M. Press, and Anzar Settlement Funding Corp. (collectively, the Investors). ADPI and ADT later settled with Halliburton for $51 million but failed to comply with the payment obligations of their contracts with the Investors. The Investors sued ADPI and ADT and eventually obtained judgments against them.[1]

In the interim, ADPI and ADT sued Greenberg Peden, P.C. and Gerald Swonke, their legal counsel in the Halliburton lawsuit, in the 61st District Court. Swonke countersued. In 2007, the court rendered a judgment awarding Swonke roughly $1.7 million.

---

[1] Appellee Littlemill obtained its judgment and turnover order in a suit filed in the 152nd District Court, and the other appellees obtained their judgments and turnover orders in a suit filed in the 127th District Court.

ADPI and ADT attempted to supersede the judgment in favor of Swonke without posting a supersedeas bond by claiming that they had a negative net worth. In response, Swonke filed a motion contesting the affidavits supporting ADPI and ADT's negative net worth claims. In 2007, the 61st District Court rendered an order granting Swonke's motion (the 2007 Order). The 2007 Order contained numerous fact findings, including findings that the affidavits were not credible; that ADPI, ADT, Van Dyke, and ADE were alter egos of each other; and that ADPI made almost $20 million in fraudulent transfers to Van Dyke and ADE "with the actual intent to hinder, delay, or defraud" Swonke. ADPI and ADT did not appeal the 2007 Order or its findings.

ADPI and ADT eventually were able to deposit cash in lieu of a bond into the court registry after Van Dyke loaned ADPI $1,086,239.73 specifically for the purpose of posting a bond in the case against Swonke. The loan agreement between ADPI and Van Dyke was titled "Promissory Note, Security Agreement & Collateral Chattel Mortgage." The money was deposited in the court registry into account no. 63901. Later, in a nearly identical loan agreement, ADE loaned ADPI $763,346.56 for the purpose of increasing the amount of the cash bond. That money was deposited in the court registry into a separate account no. 64056.

The judgment in favor of Swonke was affirmed on appeal, but the Supreme Court of Texas reversed and remanded the case to the trial court for further proceedings. *See Anglo-Dutch Petroleum International, Inc. v. Greenberg Peden*, 352 S.W.3d 445, 453 (Tex. 2011).

B.    **The Competing Claims for the Supersedeas Funds**

While the lawsuit was on remand, Van Dyke, ADE, and the Investors intervened, each seeking to obtain some or all of the funds remaining in the court registry. The Investors alleged that they were entitled to collect on the unsatisfied

3

judgments they had obtained in their lawsuits against ADPI and ADT. Van Dyke and ADE alleged that they held security interests in the funds based on their loan agreements with ADPI.

In June 2012, the Investors obtained turnover orders against the supersedeas funds deposited in the court registry in ADPI and ADT's lawsuit against Swonke.[2] Two years later, in May 2014, Van Dyke and ADE each filed Uniform Commercial Code (UCC) Financing Statements to perfect the claimed security interests reflected in their loan agreements with ADPI. Both sides filed motions requesting disbursement of the supersedeas funds, but the court declined to entertain any requests until after the underlying case was fully concluded.

On remand, a new final judgment was rendered in favor of Swonke but for a lesser amount. The lawsuit was fully concluded after the judgment was affirmed on appeal and the Supreme Court of Texas denied further review. *See Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471 (Tex. App.— Houston [14th Dist.] 2016, pet. denied). In February 2018, the trial court released $832,616.78 plus accrued interest to satisfy the judgment in favor of Swonke. As of that date, the funds remaining in the court registry totaled $1,268,584.03.

Van Dyke, ADE, and the Investors entered into a Rule 11 agreement to submit their competing claims for the remaining funds to the court on motions to be filed and served by specific dates, followed by a hearing before the court. Both sides filed substantive motions, responses, and replies supported by numerous exhibits.

The Investors sought the release of the funds on common law and statutory

---

[2] Investor Littlemill obtained a turnover order for $173,750.62 of the supersedeas fund in the court registry that were "(i) ordered released to ADPI or ADT, (ii) available for release or disbursement to ADPI or ADT or (iii) otherwise released or disbursed to ADPI or ADT." The other investors obtained a similarly worded turnover order for $992,813.62.

4

grounds, arguing that the trial court had discretion to release the funds in the court registry based on the Investors' unsatisfied judgments, their turnover orders, the appellate rules, and the fraud findings against ADPI and ADT in the 2007 Order. The Investors also argued that the trial court had the power to help the Investors satisfy their judgments by signing its own turnover order. The Investors maintained that ADPI and ADT, as the depositors of the funds into the court registry, owned "an unadjudicated claim of an equitable interest in the return of those funds" that was subject to turnover.

Van Dyke and ADE also sought release of the funds and turnover relief. Van Dyke moved to disburse and turn over to him the $403,252.55 then remaining in account no. 63901 after Swonke's judgment was satisfied. Van Dyke argued that he was not a judgment debtor; he had prior and superior rights to the funds than the judgment debtors because he loaned ADPI the funds for the discrete purpose of posting the funds in lieu of a supersedeas bond; and his interest in the funds was secured by a promissory note, security agreement, and assignment and pledge of the funds. Van Dyke also argued that the Investors' motions must be denied because it was improper to use a turnover order to determine the parties' substantive rights. ADE made similar arguments in its motion to disburse and turn over the $865,331.48 then remaining in account no. 64056 based on its loan agreement with ADPI.

After hearing the parties' arguments, the trial court rendered an "Order Releasing Supersedeas Deposits from the Court's Registry and Turnover Order" (the Release and Turnover Order). The court found that the Investors' motion "is meritorious on the common-law and statutory grounds set forth therein and therefore should be granted in its entirety." In the Release and Turnover Order, the court made additional findings, including:

5

- As of March 1, 2018, $403,252.55 remains in Harris County District Clerk CRS Account No. 63901, and $865,331.48 remains in Harris County District Clerk CRS Account No. 64056. These funds no longer constitute supersedeas funds because the judgments for which they were deposited to supersede have been paid in full;

- ADPI and ADT own "present or future rights to property" comprised of an unadjudicated claim of an equitable interest in the above-referenced funds still on deposit in the registry of the court as a matter of law;

- Intervenors [Van Dyke and ADE] did not deposit any funds into this Court's registry at any time as a matter of fact and law;

- Intervenors [Van Dyke and ADE] do not own any rights, title or interests in or to any funds deposited into this Court's registry as a matter of fact and law;

- The above-referenced funds cannot readily be attached or levied on by ordinary legal process; [and]

- The above-referenced funds are not exempt under any statute or other law from attachment, execution or seizure for the satisfaction of liabilities[.]

Because the remaining funds were insufficient to fully satisfy the amounts ADPI and ADT owed to the Investors, the court ordered the court clerk to "immediately pay" the Investors amounts roughly proportionate to the amount of their judgments. This appeal followed.

## II. ANALYSIS

In a single issue, Van Dyke and ADE contend that the trial court erred in ordering the almost $1.3 million remaining in the court registry to be paid to the Investors rather than to them. In the alternative, Van Dyke and ADE argue that turnover proceedings are procedural in nature and may not be used to determine the substantive rights of parties and non-judgment debtors without a trial.

6

In response, the Investors contend, as they did in the trial court, that the court had common law discretion and statutory discretion under the turnover statute to order disbursement of the funds to them. The Investors also argue that the trial court had no obligation to conduct a trial or other proceeding before awarding the funds to them; moreover, Van Dyke and ADE agreed to the resolution of their competing claims via a motion practice mirroring summary judgment and thus are not entitled to a "do-over."

The parties' briefs raise numerous issues concerning the possible grounds for the trial court's determination that only the Investors were entitled to the remaining funds in the court registry. For example, the parties dispute whether the trial court could take notice of its findings in the 2007 Order during the supersedeas proceeding that ADE, ADPI, and ADT were alter egos of Van Dyke (and each other) to invalidate the loan agreements on the theory that alter egos cannot enter into contracts with each other because a valid contract requires at least two parties.[3] The parties also dispute the interpretation and legal effect of the property rights, if any, created by security agreements and assignments contained in the loan agreements. Among other things, Van Dyke and ADE contend that their security interests extend to the full amount of the money loaned for "the Bond" plus all accrued interest and all other awards identified in the documents, while the Investors contend that the interests granted are limited to only those monies that are "collected" by ADPI. The parties also dispute when each other's interests "attached" for purposes of determining priority in time and whether the collateral

---

[3] While we do not express any opinion concerning the parties' merits arguments, we note that the supreme court has held that "an alter ego finding in a post-judgment net worth proceeding may not be used to enforce the judgment against the unnamed alter ego or any other nonjudgment debtor, but only to determine the judgment debtor's net worth for the purposes of Rule 24 [of the Texas Rules of Appellate Procedure]." *In re Smith*, 192 S.W.3d 564, 568–69 (Tex. 2006).

described in Van Dyke and ADE's 2014 financing statements should be classified as "monies" or "general intangibles" for purposes of determining whether Van Dyke and ADE could perfect a security interest in the funds under the UCC.

We do not address the merits of these arguments, however, because we conclude that, based on the recent Supreme Court of Texas opinion in *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chemical Co.*, the trial court was not authorized to determine the competing ownership claims of either the parties or the third-party intervenors in a turnover proceeding. *See* 540 S.W.3d 577, 585 (Tex. 2018) (per curiam). We also conclude that, consistent with the appellate opinion on remand in that case, as well as prior precedent, competing ownership claims must be determined in separate, initial proceedings. *See, e.g.*, *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, ___ S.W.3d ___, No. 09-14-00313-CV, 2019 WL 1181730 (Tex. App.—Beaumont Mar. 14, 2019, no pet. h.); *Woody K. Lesikar Special Tr. v. Moon*, No. 14-10-00119-CV, 2011 WL 3447491 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, pet. denied) (mem. op); *Lozano v. Lozano*, 975 S.W.2d 63 (Tex. App.–Houston [14th Dist.] 1998, pet. denied); *Republic Ins. Co. v. Millard*, 825 S.W.2d 780 (Tex. App.—Houston [14th Dist.] 1992, no writ). We therefore sustain Van Dyke and ADE's first issue as to their alternative argument that a remand for further proceedings is required.

## A. The Turnover Statute

Texas Civil Practice and Remedies Code section 31.002, commonly referred to as the "turnover statute," is a procedural device that permits a trial court to order the judgment debtor to turn over nonexempt property that is in the judgment debtor's possession or control, including present or future rights to property. *See* Tex. Civ. Prac. & Rem. Code § 31.002; *Alexander Dubose*, 540 S.W.3d at 581;

8

*Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 224 (Tex. 1991). The turnover statute's purpose is merely to ascertain whether or not an asset is in the possession of the judgment debtor or subject to the debtor's control. *Buller*, 806 S.W.2d at 227. It is not to be used to determine parties' and non-judgment debtors' substantive rights or property rights. *Alexander Dubose*, 540 S.W.3d at 583; *Lozano*, 975 S.W.2d at 68.

The turnover statute provides in part:

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

(2) otherwise apply the property to the satisfaction of the judgment; or

(3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

(c) The court may enforce the order by contempt proceedings or by other appropriate means in the event of refusal or disobedience.

(d) The judgment creditor may move for the court's assistance under this section in the same proceeding in which the judgment is rendered or in an independent proceeding.

*See* Tex. Civ. Prac. & Rem. Code § 31.002(a)–(d).

We review the trial court's order or judgment in a turnover proceeding for abuse of discretion. *See Buller*, 806 S.W.2d at 226. A trial court abuses its

discretion when it acts in an unreasonable or arbitrary manner, without reference to any guiding rules and principles. *Id*. A trial court has no discretion in determining what the law is or applying the law to the facts. *See Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex. 1996); *Marrs v. Marrs*, 401 S.W.3d 122, 124 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Consequently, a trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *See Marrs*, 401 S.W.3d at 124.

**B.    The Supreme Court of Texas's Opinion in *Alexander Dubose***

In *Alexander Dubose*, the issue before the supreme court was whether a post-judgment turnover order that affected the rights of an intervening non-judgment debtor was a final judgment for purposes of appeal. *See* 540 S.W.3d at 578. In that case, a law firm intervened in a turnover proceeding seeking a declaration that based on the law firm's fee agreement with the judgment debtor, the law firm owned a portion of the funds the judgment creditor sought from the judgment debtor. *Id*. at 579. The law firm also argued that its contractual claim had priority over the judgment creditor's claims. *Id*. The trial court signed a turnover order that awarded the portion of the funds not in dispute to the judgment creditor and ordered the disputed funds deposited into the court registry without prejudice to the parties' rights to assert claims to those funds. *Id*. at 579. After further proceedings, the trial court signed a release order denying the law firm's claims and awarding the disputed funds to the judgment creditor. *See id.* The law firm appealed the release order, but the Beaumont Court of Appeals dismissed the appeal for want of jurisdiction on the grounds that the law firm should have appealed the turnover order rather than the subsequent release order because the turnover order was the final, appealable judgment. *Id*. at 580.

On review, the supreme court considered whether the law firm's failure to

timely appeal the turnover order deprived the court of appeals of jurisdiction. *Id.* at 578. The supreme court began by considering whether the court of appeals erred by concluding that the turnover order was appealable because it indicated that the trial court had determined that the judgment debtor owned the disputed funds. *See id.* at 582. Contrary to the court of appeals, the supreme court determined that neither the trial court's oral statements nor the turnover order finally disposed of the competing claims. *Id.* at 582–83. The supreme court also found it worth noting that, in addition, "there was never a separate, initial proceeding adjudicating [the law firm's] claims." *Id*. at 583.

The supreme court criticized the court of appeals' conclusion that the turnover order reflected a determination of the parties' substantive ownership rights because it ran counter to longstanding precedent that "regards turnover proceedings as being limited to their purely procedural nature and, thus, bars use of the turnover statute to determine parties' and non-judgment debtors' substantive rights." *See id.* at 583 (citing *Buller*, 806 S.W.2d at 227). The supreme court also disapproved of the case law relied on by the court of appeals and the judgment creditor for the proposition that "a non-judgment debtor cannot complain that their substantive rights were decided in a turnover proceeding if they intervened." *Id*. at 585–86. As the supreme court explained: "[T]he turnover statute has no provision conferring authority on trial courts to decide the substantive rights of the parties properly before it in a turnover proceeding, let alone the rights of strangers to the underlying judgment." *Id*. at 585.

The supreme court acknowledged that conflicting opinions issued in 1991 have since "caused much confusion" about the permissible scope of turnover proceedings regarding "(1) how to resolve competing substantive claims to property sought in a turnover application if the turnover proceeding[] is truly a

purely procedural mechanism, and (2) the extent to which a turnover order can affect the rights of non-judgment debtors." *Id*. at 584. However, because neither the turnover order nor any other judgment reflected a decision on the law firm's substantive claims, the supreme court found it unnecessary to "delineate the appropriate mechanism for resolving competing substantive claims to property sought in a turnover application." *Id*. at 586.

The supreme court then determined that the turnover order did not function as a mandatory injunction and thus was not a final, appealable order. *See id*. at 583, 586–88. The supreme court held that the release order, not the earlier turnover order, was the first determination of the parties' competing substantive ownership rights. *Id*. at 588. Because the law firm timely appealed from the release order, the supreme court remanded the case to the court of appeals to address the appeal on the merits. *See id.* at 588–89.

## C. The Court of Appeals' Opinion on Remand in *Alexander Dubose*

On remand, the law firm appealed the trial court's judgment as contained in the release order. *Alexander Dubose*, 2019 WL 1181730, at *1. The law firm claimed ownership rights to a portion of the disputed funds based on its fee agreement as well as a contractual security interest and attorney's lien that were superior to the judgment creditor's lien. *See id.* Additionally, the law firm argued that its property rights as a non-judgment debtor were at issue. *Id*. at *3. To determine the appeal, the court of appeals first had to address the issue the supreme court declined to reach on review: whether and to what extent the trial court could adjudicate such competing claims in a turnover proceeding. *See id.* at *1; *see also Alexander Dubose*, 540 S.W.3d at 584–85. Based on the record before it, the court of appeals held that the trial court abused its discretion when it entered the release order requiring payment of the disputed funds to the judgment creditor without

first adjudicating the claims of ownership by the non-judgment debtor in a separate, initial proceeding. *See Alexander Dubose*, 2019 WL 1181730, at *8.

To reach its conclusion, the court of appeals first examined the split of authority among the courts concerning whether substantive claims can be adjudicated in turnover proceedings. *See id.* at *4. The court of appeals determined that a majority of cases have held that turnover proceedings cannot be used to determine the parties' substantive rights or be applied to non-judgment debtors. *Id*. at *4–5 (collecting cases). The court of appeals also determined that a minority of cases have allowed for substantive determinations and reaching beyond the judgment debtor if the trial court made "particular findings." *Id*. at *5 (collecting cases). As the court of appeals found, most of these cases require "at a minimum, a finding by the trial court that the true judgment debtors are owners of the property at issue." *Id*. The court of appeals distinguished its case from the minority line of cases because the trial court never made a fact finding that the judgment debtor owned the disputed funds. *Id*.

Next, the court of appeals addressed whether the law firm's post-judgment intervention enabled the trial court to determine the law firm's substantive claims. *Id*. The court of appeals rejected the judgment creditor's position that because the law firm "inject[ed] itself into the proceedings" by intervening it could not complain about the trial court's substantive determination. *Id*. The court of appeals also cited the supreme court's rejection of this argument on review. *Id*. at *6 (citing *Alexander Dubose*, 540 S.W.3d at 585). As the court of appeals reasoned:

> If we were to agree with [the judgment creditor's] assertion, we would be determining [the law firm's] only options were: (1) forfeit any interest it had in the funds by failing to intervene; or (2) intervene and attempt to protect their interest but forfeit any right to complain regarding a trial court's abuse of discretion. We do not believe protecting one's interest in property post-judgment by intervening in a

turnover proceeding forfeits one's right to complain about a trial court's rulings on appeal, especially when a trial court "expand[s] the scope of the turnover statute beyond its purpose as a purely procedural device to assist judgment creditors in post-judgment collections." *See Republic Ins. Co.*, 825 S.W.2d at 782. If we were to conclude otherwise, a non-party to the underlying litigation holding a property interest that is under threat in a post-judgment enforcement proceeding would, in effect, be left without a remedy.

*Id.*

Ultimately, the court of appeals aligned itself with the majority of cases holding that a trial court cannot determine substantive claims in a turnover proceeding and concluded that "a trial court must hold separate, initial proceedings adjudicating competing claims of ownership before and apart from the issuance of a turnover order." *Id.* As the court of appeals explained:

We believe this solution affords due process to non-parties who intervene post-judgment to protect their property interests, while precluding the trial court from expanding the turnover procedure beyond its purely procedural nature. By conducting initial, separate proceedings on claims of competing ownership, a trial court's resolution will be distinct from the turnover proceeding. This is consistent with the turnover statute and long-standing precedent holding the parties' and non-judgment debtors' substantive rights cannot be adjudicated in a turnover proceeding.

*Id.* (citation omitted).

The court of appeals also concluded that its holding comports with the language of section 31.002: "By statute, a judgment creditor is entitled to aid *if* the judgment debtor owns property; then, the trial court may reach property the judgment debtor possesses or controls." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 31.002(a), (b); *Buller*, 806 S.W.2d at 227; *Parks v. Parker*, 957 S.W.2d 666, 670 (Tex. App.—Austin 1997, no pet.)). The court of appeals reasoned that without holding an initial, separate proceeding to determine competing claims of

14

ownership, a judgment creditor seeking turnover could not meet the first element the statute requires, which is to show that "the judgment debtor owns [the] property, including present or future rights to property." *Id*. at *7 (alterations in original) (quoting Tex. Civ. Prac. & Rem. Code § 31.002(a)).

Accordingly, the court of appeals held that in light of the competing ownership claims to the funds, the trial court abused its discretion when it entered the release order requiring payment of the disputed funds in the court's registry to the judgment creditor without first adjudicating the claims of ownership by the non-judgment debtor in a separate, initial proceeding. *Id*. at *7–8. The court of appeals reversed the trial court's release order and remanded the case for further proceedings. *Id*. at *8.

## D. The Trial Court Erred in Determining Substantive Rights in the Turnover Proceeding

In this case, Van Dyke and ADE claim property rights based on security agreements and assignments contained in their loan agreements with ADPI, while the Investors claim rights as judgment creditors of ADPI and ADT. These claimants are neither parties to the underlying judgment nor judgment debtors. Yet, the trial court finally adjudicated the parties' rights in the turnover proceeding, finding that ADPI and ADT own an "unadjudicated claim of an equitable interest" in the remaining funds, Van Dyke and ADE "do not own any rights, title or interests in or to any funds," and the Investors were entitled to all of the funds based on "the common-law and statutory grounds set forth" in the Investors' motion.

In light of the supreme court's recent emphasis on the continued vitality of prior precedent holding that turnover proceedings are purely a procedural device that do not authorize trial courts to determine parties' and non-judgment debtors'

15

substantive rights, we conclude that the trial court abused its discretion by reaching the merits of the competing claims in the turnover proceeding. *See, e.g., Alexander Dubose*, 540 S.W.3d at 584–85; *Buller*, 806 S.W.2d at 227; *Alexander Dubose*, 2019 WL 1181730, at *6–7; *see also Elgohary v. Herrera Partners, L.P.*, No. 01-13-00193-CV, 2014 WL 2538556, at *3 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.) (stating that "the turnover statute does not authorize a court to issue orders against those who are not judgment debtors or under the judgment debtor's control"); *Moon*, 2011 WL 3447491, at *6 (holding that the trial court abused its discretion by making a substantive determination that the appellant's reimbursement claim was without merit in a turnover proceeding); *Lozano*, 975 S.W.2d at 68 ("Texas courts do not apply the turnover statute to non-judgment debtors. Nor can the turnover statute be used to determine a party's substantive rights or property rights of third parties." (citation omitted)); *Republic Ins. Co.*, 825 S.W.2d at 783 (explaining that the turnover statute "does not allow for a determination of the substantive rights of involved parties").

The Investors dismiss the supreme court's opinion in *Alexander Dubose* as inapplicable, however, arguing that Van Dyke and ADE agreed to resolve the parties' competing claims by motion practice and are not entitled to a "do-over" now that the trial court ruled against them. The Investors point out that Van Dyke and ADE signed a Rule 11 agreement governing how the competing claims would be submitted to the trial court, filed separate motions arguing that the trial court should disburse the funds to them, and even stated in one filing that "this Court has discretion to enter a judgment for ADE and Van Dyke." According to the Investors, Van Dyke and ADE cannot encourage trial courts to proceed in certain ways or agree to trial court procedures and then complain on appeal that the trial court erred by proceeding as encouraged or agreed. But the Investors do not

explain how the parties' agreement could confer authority on the trial court to determine rights it is otherwise precluded from determining in a turnover proceeding merely because Van Dyke and ADE intervened to protect their substantive rights to the disputed funds. *Cf. Alexander Dubose*, 540 S.W.3d at 585 (rejecting the argument that a non-party's intervention in a turnover proceeding to protect its interests authorizes a court to adjudicate third-party rights).

The Investors next contend that the trial court's order can be affirmed on the common law grounds cited in the Release and Turnover Order based on *Burns v. Bishop*, 48 S.W.3d 459 (Tex. App.—Houston [14th Dist.] 2001, no pet.). In *Burns*, the depositor of supersedeas funds and two judgment creditors each sought turnover of the funds remaining in the court registry. *Id*. at 462–63. A partnership intervened in the proceeding to claim an interest in the funds based on a promissory note and assignment from the depositor. *See id*. at 463. This court affirmed the trial court's judgment awarding the remaining funds to the judgment creditors, noting that "[f]unds on deposit in the registry of a trial court are always subject to the control and order of the trial court, and the court enjoys great latitude in dealing with them." *Id*. at 467. The Investors maintain that just as in *Burns*, the trial court did not abuse its discretion in disbursing the funds to the Investors to partially satisfy their judgments and turnover orders. Moreover, the Investors contend that because the relief the trial court granted in *Burns* was based on the common law rather than the turnover statute, *Alexander Dubose* does not apply to or permit a "do-over" in a new common law proceeding. We conclude that *Burns* is not dispositive as the Investors suggest.

In *Burns*, John Burns made a series of deposits of cash in lieu of a bond into the court registry in connection with an appeal and settlement of a lawsuit. *Id*. at 462. Burns borrowed the money for his initial deposit from a family limited

17

partnership and assigned to the partnership "all my cash refund up to and including the principal amount of $117,274.41 plus accrued interest." *Id*. After the case was concluded and the supersedeas funds were paid out, Burns and two judgment creditors claimed rights in the remaining funds. *Id*. at 462–63. The partnership later intervened in the proceeding to request that the trial court award it the money on deposit. *Id*. at 463. The trial court found that Burns had a claim to the funds in the registry against which his creditors could collect, and the partnership's assigned claim of any refund due Burns was inferior to the judgment creditors' claims to the funds in the registry. *Id.* Because the judgment creditors' claims exceeded the amount remaining after the superseded judgment was satisfied, the trial court divided the bulk of the funds to the judgment creditors roughly in proportion to the amount of their claims. *Id*.

On appeal, this court affirmed, explaining that once the superseded judgment was satisfied, Burns had the only claim to the funds in the registry until the judgment creditors asserted their superior claim to Burns's interest. *See id.* at 466–67. In contrast, the partnership's only claim to the funds was based on the contingency that the money would be refunded to Burns, and it was further limited to the $117,274.41 principal plus interest on that amount. *Id*. at 467. Because Burns did not receive a refund, the assignment transferred nothing to the partnership. *Id*. Even if there had been a refund, the court explained, the partnership failed to advance a viable legal theory supported by evidence to recover the specific portion of the funds comprising the principal and interest the assignment covered. *See id.* at 467–68. The partnership did not did seek to recover against Burns, was not awarded the money, and did not appeal. *Id*. at 467. Significantly, the court noted that had the partnership possessed a claim to the unrefunded deposit, the result may well have been different. *See id*.

18

Unlike the partnership in *Burns*, Van Dyke and ADE claim property interests in the remainder of the funds deposited into the court registry based on rights created by both assignments and security agreements contained in their loan agreements with ADPI, and they have presented legal arguments and evidence in support of their claims which the Investors hotly contest. More importantly, in both the trial court and on appeal, Van Dyke and ADE have challenged the trial court's authority to determine the parties' substantive rights in a turnover proceeding—an issue not raised or discussed in *Burns*.

While the Investors rely on the trial court's discretion as exercised in *Burns*, *Alexander Dubose* and the precedent discussed above make clear that a trial court has no discretion to determine the substantive rights of parties and non-judgment debtors in a turnover proceeding. *See, e.g.*, *Alexander Dubose*, 540 S.W.3d at 583; *Buller*, 806 S.W.2d at 227; *see also Ex parte Swate*, 922 S.W.2d 122, 125–26 (Tex. 1996) (Gonzalez, J., concurring) (arguing that "[a] turnover order that issues against a non-party for property not subject to the control of the judgment debtor completely bypasses our system of affording due process" absent "other initial proceedings"); *Elgohary*, 2014 WL 2538556, at *4 ("[A]s a purely procedural mechanism to aid in collecting judgments, a turnover order cannot be used as a shortcut to avoid judicial proceedings necessary to provide third parties due process in adjudicating their substantive rights."). The Investors cite no case holding that a trial court may exercise its discretion over funds in the court registry in a manner that allows it to circumvent the limited procedural nature of a turnover proceeding and disregard third parties' due process rights. On this record, we conclude that the trial court abused its discretion when it rendered the Release and Turnover Order.

**E.      Remand for Separate, Initial Proceedings is Required**

Having concluded that the trial court abused its discretion, we hold that a remand for separate, initial proceedings is required in this case. *See, e.g.*, *Alexander Dubose*, 2019 WL 1181730, at \*6–7 (concluding that a trial court must hold separate, initial proceedings adjudicating competing claims of ownership before and apart from the issuance of a turnover order); *Moon*, 2011 WL 3447491, at \*6 (recognizing that the turnover statute does not allow for a determination of the parties' substantive rights and that the trial court had no discretion to "skip the trial on the merits and declare a party the winner") (quotations and alterations in original omitted); *Elgohary*, 2014 WL 2538556, at \*4 (holding that creditor "cannot use the turnover statute to determine ownership of disputed funds or litigate issues of alter-ego"); *United Bank Metro v. Plains Overseas Grp., Inc.*, 670 S.W.2d 281, 284 (Tex. App.—Houston [1st Dist.] 1983, no writ) (holding that creditor who obtained judgment against individual was not entitled to turnover order against corporation alleged to be individual's alter ego until creditor successfully pierced corporate veil "in a separate trial"); *see also Resolution Trust Corp. v. Smith*, 53 F.3d 72, 80 (5th Cir. 1995) (holding that trial court erred in determining that stock pledge was a fraudulent transfer and thus void in a Texas turnover proceeding because the validity of the pledge agreement "must be challenged in a further proceeding.").

As discussed above, the court of appeals on remand in *Alexander Dubose* found that a minority of Texas cases have permitted substantive determinations in turnover proceedings if supporting fact findings are made. *See Alexander Dubose*, 2019 WL 1181730, at \*5. The court of appeals distinguished the case before it from the minority line of cases because no fact findings were made in that case. *Id*. In the case before us, the trial court made fact findings concerning the ownership

rights and interests of both the parties and the non-party intervenors. Nevertheless, we decline to follow the minority line of cases because it is contrary to the precedent holding that turnover proceedings cannot be used to determine parties' substantive rights or be applied to non-judgment debtors. *See Alexander Dubose*, 540 S.W.3d at 583–84. This precedent applies even as to third parties that intervene in the turnover proceeding to protect their property rights. *See id.* at 585.[4] To conclude otherwise would improperly "enlarge[] the turnover statute's scope beyond the procedural vehicle" our legislature contemplated merely because the trial court made fact findings it was not authorized to make. *See Republic Ins. Co.*, 825 S.W.2d at 783.

Because the trial court lacked authority to adjudicate the competing ownership claims to the funds remaining in the court registry in a turnover proceeding, the trial court abused its discretion in ordering the turnover of those finds in the absence of separate, initial proceedings to adjudicate the claims of the parties and the intervening non-judgment debtors. *See Alexander Dubose*, 2019 WL 1181730, at \*7. Accordingly, we do not reach the merits of Van Dyke and ADE's issues.

### III. CONCLUSION

We sustain Van Dyke and ADE's sole issue on their alternative ground that turnover proceedings may not be used to determine the substantive rights of parties and hold that the trial court erred in adjudicating the competing ownership claims to the funds remaining in the court registry in a turnover proceeding without separate, initial proceedings to resolve the claims of the parties and non-party intervenors. We reverse the trial court's Release and Turnover Order and remand

---

[4] Notably, Van Dyke and ADE point out that that the Investors have previously filed separate lawsuits raising alter ego and other claims against Van Dyke the Anglo-Dutch entities.

21

the case to the trial court for further proceedings.


/s/    Ken Wise
Justice


Panel consists of Justices Wise, Zimmerer, and Spain.