**Opinion issued March 12, 2026**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00657-CV**

———————————

**JAJWK, LLC AND JAJWK, LP, Appellants**

**V.**

**PRIMEWAY FEDERAL CREDIT UNION, Appellee**

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-79495**

# O P I N I O N

Under the unbroken decisions of this Court, a trial court may not adjudicate non-party rights through the turnover statute. *See Bizkeeping Corp. v. Benton*, 714 S.W.3d 857, 864 (Tex. App.—Houston [1st Dist.] 2025, orig, proceeding);

*Tomlinson v. Khoury*, 624 S.W.3d 601, 606 & n.4 (Tex. App.—Houston [1st Dist.] 2020, pet. denied); *Elgohary v. Herrera Partners, L.P.*, No. 01-13-00193-CV, 2014 WL 2538556, at *3 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.). "A turnover order that issues against a non-party for property not subject to the control of the judgment debtor completely bypasses our system of affording due process." *Elgohary*, 2014 WL 2538556 at *3 (quotation omitted). The preceding line of decisions controls this case.

This appeal arises out of a post-judgment turnover proceeding. Primeway Federal Credit Union obtained a judgment against a car dealership (Emperial Motor Sales LLC) and its owner (Matthew Favard), at which point Primeway naturally began trying to enforce the judgment. The judgment did not mention the two JAJWK entities (appellants JAJWK, LLC and JAJWK, LP), and there is no reason that it should, because those entities were strangers to the suit.

The JAJWK entities argue that the trial court impermissibly voided liens that they have on several cars in the dealership's inventory. Specifically, they challenge two orders: (1) a turnover order voiding their liens on the cars at issue and directing a court-appointed receiver to sell the cars and (2) a second order distributing the proceeds from the sale of one car and ending the receivership.

According to the JAJWK entities—whom we will refer to in the aggregate as JAJWK—those orders are void because non-party rights cannot be adjudicated in a

post-judgment turnover proceeding. We agree. We have reached that conclusion in the *Elgohary* line of cases, and we reiterate it here.

We reverse the turnover orders and render judgment vacating them.

**Background**

**A.    Appointment of a Receiver**

After obtaining a judgment for $84,000 against the dealership and its owner, Primeway sought a turnover order and appointment of a receiver to aid in collecting the judgment. *See* TEX. CIV. PRAC. & REM. CODE § 31.002 (authorizing turnover proceeding). The court then appointed a receiver. *See id.* § 31.002(b)(3) (authorizing appointment of receiver to take possession of nonexempt property, sell it, and pay proceeds to judgment creditor to extent necessary to satisfy unpaid judgment).

The receiver filed a report informing the trial court that the dealership held title to several cars in the possession of JAJWK that could be sold to satisfy the judgment—if not for liens that JAJWK claimed to have on them. The receiver disputed the validity of the liens and requested that the trial court declare the liens invalid and order JAJWK to turn the cars over for sale.

JAJWK objected to the receiver's report and requests. It argued that the liens on the cars are valid. It also argued that the validity of the liens could not be adjudicated in the post-judgment turnover proceeding because JAJWK was not a party in the underlying litigation.

3

**B.     Order #1: June 26, 2023 Turnover Order**

The trial court signed a turnover order on June 26. The order declared the JAJWK liens void. It ordered JAJWK to turn the cars at issue over to the receiver, stating that "JAJWK, LLC and JAJWK, LP and its members" are to turnover any vehicles in their possession titled to Emperial or Favard "within 5 business days at their expense." And it ordered the receiver to sell the cars to satisfy the unpaid judgment.

The receiver filed a second report, in which he notified the trial court that he had sold one of the cars for an amount that was more than sufficient to satisfy the judgment. The receiver requested permission to distribute the sale proceeds, paying the judgment and disbursing the remainder to pay the receiver's fee and expenses.

JAJWK filed an "Objection to Receiver's Second Report and Amended Order to Distribute and Complete" objecting to the receiver's second report and requests. It requested that the trial court deny the receiver's requests to distribute the proceeds of the sale of the car. It also advised that it had filed a petition for a writ of mandamus in this Court challenging the turnover order.

**C.     Order #2: August 15, 2023 Order to Distribute**

JAJWK's mandamus petition in this Court started with promise, in that we requested a response and granted temporary relief. But the effort ultimately came to nothing, as the Court later denied relief. *See In re JAJWK, LLC*, No. 01-23-00486-

CV, 2023 WL 5030179 (Tex. App.—Houston [1st Dist.] Aug. 8, 2023, orig. proceeding) (mem. op.).

The trial court then signed an order granting the receiver's request to distribute the proceeds of the sale on August 15. In addition to ordering the distribution of the funds as proposed by the receiver, the trial court ordered the remaining unsold cars to be returned to the car dealership. With respect to the car sold by the receiver, the court ordered the Texas Department of Motor Vehicles to transfer title of that vehicle to the buyer "free and clear of any liens and interests."

## D.    JAJWK Continued to Assail the Orders

JAJWK kept fighting in two ways. First, it filed a notice of appeal from the turnover order and from the order to distribute the proceeds from the sale of the car. Second, it sought mandamus relief in the Texas Supreme Court, but the Supreme Court has put that mandamus proceeding on hold by abating it pending the outcome of this appeal. *In re JAJWK, LLC*, No. 23-1046 (Tex. Dec. 6, 2024) (order abating original proceeding).

## Appellate Jurisdiction

Before reaching the merits in any appeal, we must have jurisdiction to do so. *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020) ("[W]e have an obligation to examine our jurisdiction any time it is in doubt."); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) ("Subject matter

5

jurisdiction is never presumed and cannot be waived."). The events relevant to appellate jurisdiction all took place in 2023. JAJWK seeks to appeal from two turnover orders:

- **Turnover Order #1**: Signed June 26
- **Turnover Order #2**: Signed August 15

The notice of appeal listed both orders as subjects of the appeal.

The notice of appeal was filed on September 1, which is more than 30 days after the first turnover order, so Primeway says that there is a jurisdictional problem with respect to the first turnover order. TEX. R. APP. P. 26.1 (providing generally that notice of appeal must be filed within 30 days after judgment is signed). JAJWK counters that it had 90 days, not 30 days, because it timely moved to modify the first order. It says that its motion to modify came in its "Objection to Receiver's Second Report and Amended Order to Distribute and Complete," which reiterated a due process complaint that it was urging in the then pending mandamus that assailed the first turnover order. This so-called "objection" and the mandamus filings fit into the timeline like this:

- **Turnover Order #1**:          June 26
- JAJWK Mandamus Petition:   July 3
- Receiver's Second Report:    July 7
- JAJWK Objection:             July 14
- **Turnover Order #2**:          August 15

6

- JAJWK Notice of Appeal:       September 1

According to JAJWK, the objection sought to modify the first turnover order, thus extending the appeal deadline to day 90. *See* TEX. R. APP. P. 26.1(a)(2).

Start with the first turnover order signed on June 26. That order plainly constitutes a final and appealable judgment. *See Bizkeeping*, 714 S.W.3d at 865 (turnover order requiring transfer of property is "the equivalent of a final judgment that is subject to appeal by a judgment debtor or judgment creditor"); *see also Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 582–83 (Tex. 2018) (per curiam) (turnover order that deferred deciding ownership of disputed funds was not appealable). JAJWK did not file a notice of appeal within 30 days of the order, but it did so within 90 days, so the question becomes whether the appellate timetable was extended from 30 to 90 days by an appropriate motion.

Rule of Civil Procedure 329b(g) provides that "[a] motion to modify, correct, or reform a judgment . . . shall extend the trial court's plenary power and the time for perfecting an appeal in the same manner as a motion for new trial." TEX. R. CIV. P. 329b(g). If JAJWK's written "objection" was, in substance, a motion to modify, it will extend the deadline. *See Adams v. Ross*, No. 01-15-00315-CV, 2016 WL 4128335, at *2 (Tex. App.—Houston [1st Dist.] Aug. 2, 2016, no pet.) (mem. op.)

(motion for reconsideration seeking modification or reversal of judgment qualifies as new-trial motion that extends deadline to appeal from 30 to 90 days).

To decide whether the "objection" constituted a motion to modify, we look at its substance, not its title. *Surgitek v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999); *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) (orig. proceeding). The question is not "whether the pleading specifically requests a 'modification' or 'correction' or 'reformation' of the judgment." *Brazos Elec. Power Coop., Inc. v. Callejo*, 734 S.W.2d 126, 128 (Tex. App.—Dallas 1987, no writ).

Instead, the question is whether granting the motion would result in a substantive change to the judgment. *Id.* "[A] timely filed postjudgment motion that seeks a substantive change in an existing judgment qualifies as a motion to modify under Rule 329b(g), thus extending the trial court's plenary jurisdiction and the appellate timetable." *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 314 (Tex. 2000); *Brazos Elec. Power Coop.*, 734 S.W.2d at 128 ("The manifest purpose of the rules is to eliminate jurisdictional pitfalls that result in dismissals on technical grounds.") (quotation omitted); *Doctor v. Pardue*, 186 S.W.3d 4, 16 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (following *Lane Bank Equipment* and *Brazos Electric Power Cooperative*).

We now apply this test to JAJWK's objection. The objection has several strands, several of which refer to Turnover Order #1:

8

- Paragraph 1 states that JAJWK filed a mandamus petition and motion for temporary relief "since Receiver and this Court have violated the substantive property interest of JAJWK and other third parties without judicial authority, adequate notice, and due process of law."

- Paragraph 3 states that JAJWK has a "security interest" in the luxury cars at issue and re-urges JAJWK's original position, espoused in opposition to the receiver's first report and motion to transfer and sell the cars resulting in Turnover Order #1, that JAJWK was not a "part[y] to the underlying lawsuit and neither JAJWK's security interest nor the three luxury vehicles were at issue therein."

- Paragraph 6 states that JAJWK objected in writing to the motion to transfer and sell and then pressed its due process point at the hearing that was held in June 2023 and that resulted in Turnover Order #1.

- Paragraph 7 states that the trial court nonetheless ordered that the "UCC and title Liens associated with [JAJWK] are void" and ordered turnover anyway, and paragraph 7 goes on to cite the first turnover order itself as an exhibit, which is attached to the written objection.

- In the prayer, JAJWK opposes the relief sought as Turnover Order #2, and it prays generally for further relief: "JAJWK further requests all relief at law or [in equity] to which it is justly entitled."

The mandamus petition later failed in this Court, but at the time of the objection, the mandamus remained pending.

The issue is whether the objection was a motion that, if granted, would have resulted in a substantive change to the judgment. On these facts and given the timing and nature of the relevant filings, the answer is yes. First, the objection complained about a due process deprivation, not just from what would become Turnover Order #2, but also from what already existed as Turnover Order #1. JAJWK reiterated its original argument, first advanced in opposition to the motion to transfer that led to

9

the first turnover order, that its security interests in the luxury cars had been improperly invalidated in the first turnover order. That is, JAJWK's objection to the second order was premised in large part on its original due process objection to the first order. If JAJWK was right about a due process problem as to one order, it would be just as right about the other order.

Second, the general prayer for relief—which "further" sought "all relief" to which JAJWK was "justly entitled"—makes the most sense when read to assail the first turnover order. The prayer is hard to interpret in any other fashion, as JAJWK had no other obvious species of "further" relief that it would have wanted, such as damages, attorney's fees, or interest. It sought due process. It pleaded for help with a due process violation in connection with the first turnover order, and it reminded the trial court of the pending mandamus petition, which urged the same arguments. JAJWK had made these same arguments back when the first turnover order was being contemplated.[1] On this record, JAJWK's "objection" was a motion to modify that extended its time to perfect the appeal from the first turnover order.

This does not mean that we would read a general prayer for further relief so generously in other settings. But the prayer for relief has to mean something. With

---

[1] The trial court surely knew about the mandamus petition from having been served with it because the judge was the respondent in the petition, so that provides all the more reason for the trial court to understand what JAJWK was asking for in its objection.

post-judgment orders being almost sui generis,[2] and with the policy against appeal rights being "unnecessarily lost to technicalities," *Guest v. Dixon*, 195 S.W.3d 687, 688 (Tex. 2006) (per curiam), we see no reason to read the prayer, in the context of the filed objection, so narrowly. *See Gomez v. Texas Dep't of Crim. Just.*, 896 S.W.2d 176, 176 (Tex. 1995) (per curiam) ("The record indicates that Gomez's 'bill of review' assailed the trial court's judgment. Consequently, the appellate timetable was extended from thirty days to ninety days . . . .").

Nor do we deny the importance of clear deadlines. "Litigation is a zero-sum game, and bending the rules to help one party inevitably hurts another." *Edmond v. U.S. Postal Serv. Gen. Couns.*, 953 F.2d 1398, 1401 (D.C. Cir. 1992) (per curiam) (Silberman, J., concurring). But the rules and appellate deadlines are crystal clear. JAJWK had 30 days within which to move to modify the first turnover order. The question here is simply whether its filed objection—with its arguments about due process, its references to the pending mandamus that assailed the first turnover order on due process grounds, and its prayer for further relief—extended that deadline. We answer that record-specific question in the affirmative. The filed objection extended the appellate timetable and made the notice of appeal timely as to both orders.

---

[2]     The system has not created a mechanism for seeking review of such orders in the way that it provides for Rule 24 review of supersedeas orders by simple motion. *See* TEX. R. APP. P. 24.4. And lawyers sometimes make mistakes in the way they pursue appellate relief from turnover orders or orders relating to post-judgment discovery.

In addition to the timeliness of the notice of appeal, Primeway raises a second challenge to our appellate jurisdiction: mootness. Specifically, Primeway argues that this appeal is moot because the first turnover order authorized the receiver to sell three vehicles, and the receiver sold a Rolls Royce, satisfying the judgment against Emperial and Favard.

Courts cannot decide cases that become moot during the pendency of the litigation. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012). "A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Id.*; *see Matthews v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016) ("The mootness doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the live controversy ceases because of subsequent events."). "When a party appeals an order appointing a receiver or authorizing sale of certain property and the property has been sold, the appeal of the order becomes moot." *Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189, 196 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

We disagree with Primeway that the receiver's sale of the Rolls Royce extinguishes the controversy and renders this case moot. First, Turnover Order #1 ordered JAJWK to "turnover any vehicles in their possession that are titled to

12

Emperial Motor Sales, LLC and/or Matthew Favard . . . *at their expense* to the Receiver." (Emphasis added.) Second, Turnover Order #1 affected three vehicles, and no evidence exists in the record that the receiver sold the other two vehicles. And third, Turnover Order #1 voided JAJWK's "UCC and title Liens" on all three vehicles, including the two vehicles that have not been sold. Resolution of this appeal can therefore affect JAJWK's rights and interests, and this controversy is still live and not moot. *See Heckman*, 369 S.W.3d at 162 ("Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests."); *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (stating that controversy ceases to exist when parties "lack a legally cognizable interest in the outcome") (quotation omitted).

We conclude that JAJWK timely filed its notice of appeal and that a live controversy still exists between the parties. We therefore have appellate jurisdiction over this appeal, and we now turn to the merits of JAJWK's appellate issues.

**Validity of Turnover Orders**

In its first and second issues, JAJWK challenges the trial court's power to adjudicate its substantive property rights in a post-judgment turnover proceeding because it was not a party to the underlying suit leading to the judgment.

The outcome of this appeal is dictated by the *Elgohary* line of cases. The turnover statute "is a procedural device to aid judgment creditors in satisfying unpaid

13

judgments," but it "does not contain any provision for resolving substantive disputes about the ownership of property." *Bizkeeping*, 714 S.W.3d at 864 (citing TEX. CIV. PRAC. & REM. CODE § 31.002). Turnover proceedings "cannot be used to resolve such disputes." *Id.*; *accord Elgohary*, 2014 WL 2538556, at *4. A turnover order against a non-party "for property not subject to the control of the judgment debtor completely bypasses our system of affording due process." *Elgohary*, 2014 WL 2538556, at *3 (quotation omitted). Litigants may not use turnover proceedings "as a shortcut to avoid judicial proceedings necessary to provide third parties due process in adjudicating their substantive rights." *Bizkeeping*, 714 S.W.3d at 865 (quoting *Elgohary*, 2014 WL 2538556, at *4). Instead, when an ownership dispute involves a third party, that dispute "must be litigated and decided with all the ordinary process that is due to the parties involved." *Id.* The two orders at issue in this case failed to heed these rules, so they must be overturned.

The receiver contends that JAJWK voluntarily joined the post-judgment proceedings and thus forfeited any complaint about its rights being adjudicated there. But as Justice Wise has explained in a similar case, that kind of bootstrapping will not turn an improper proceeding into a proper one merely because the non-party showed up to complain about it. *See Van Dyke v. Littlemill Ltd.*, 579 S.W.3d 639, 649 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("But the Investors do not explain how the parties' agreement [governing how competing claims to funds

would be submitted to the trial court] could confer authority on the trial court to determine rights it is otherwise precluded from determining in a turnover proceeding merely because Van Dyke and ADE intervened to protect their substantive rights to the disputed funds.").

Primeway states that it has a release argument to defeat JAJWK's position. In Primeway's view, JAJWK released any alleged interests in the property. The parties can litigate those kinds of arguments in a proper proceeding, but not in a turnover proceeding. *See Bizkeeping*, 714 S.W.3d at 864 ("[T]he turnover statute does not contain any provision for resolving substantive disputes about the ownership of property."); *Van Dyke*, 579 S.W.3d at 648 (concluding that trial court abused its discretion "by reaching the merits of the competing claims in the turnover proceeding"). Nothing in this opinion undertakes to resolve the substantive dispute. We hold only that the turnover orders of June 26 and August 15, 2023, violate due process and are therefore void as to JAJWK.

We sustain JAJWK's first and second issues.[3]

---

[3] Because we conclude that the trial court's turnover orders violate JAJWK's due process rights and are void, we need not address JAJWK's third appellate issue relating to whether the trial court abused its discretion by distributing the funds following the sale of the Rolls Royce and discharging the receiver.

## Conclusion

We reverse the trial court's June 26 and August 15, 2023 turnover orders and render judgment vacating those orders.

David Gunn
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.